## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| CAREDX, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 19-662 (CFC) (CJB) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| NATERA, INC., | ) |
| | ) **FILED UNDER SEAL** |
| Defendant. | ) |

## PROPOSED FINAL PRETRIAL ORDER

On October 20, 2021, below-named counsel for CareDx, Inc. ("CareDx") and below-named counsel for Defendant Natera, Inc. ("Natera") shall appear before the Court for a pretrial conference pursuant to Fed. R. Civ. P. 16, Delaware Local Civil Practice and Procedure Rule 16.3, and this Court's January 20, 2021 Oral Order re-setting the Scheduling Order Deadlines.

| Party | Local Counsel | Lead Counsel |
|---|---|---|
| CareDx | Brian Farnan<br>Michael Farnan<br>FARNAN LLP<br>919 N. Market St., 12th Floor<br>Wilmington, DE 19801<br>(302) 777-0300<br>(302) 777-0301 (Fax)<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com | Edward R. Reines<br>Derek C. Walter<br>Robert S. Magee<br>WEIL, GOTSHAL &<br>MANGES LLP<br>201 Redwood Shores<br>Parkway<br>Redwood Shores, CA 94065<br>(650) 802-3000<br>edward.reines@weil.com<br>derek.walter@weil.com<br>robert.magee@weil.com |

| Party | Local Counsel | Lead Counsel |
|---|---|---|
| | | Randi W. Singer<br>Anna Dwyer<br>Elizabeth McLean<br>WEIL, GOTSHAL &<br>MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8152<br>randi.singer@weil.com<br>anna.dwyer@weil.com<br>elizabeth.mclean@weil.com |
| Natera | Jack B. Blumenfeld (#1014)<br>Derek J. Fahnestock (#4705)<br>Anthony D. Raucci (#5948)<br>MORRIS, NICHOLS, ARSHT<br>& TUNNELL LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>dfahnestock@morrisnichols.com<br>araucci@morrisnichols.com | Bruce G. Vanyo<br>KATTEN MUCHIN<br>ROSENMAN LLP<br>575 Madison Avenue<br>New York, NY 10022<br>(212) 940-8787<br>bruce@katten.com<br><br>Kristin J. Achterhof<br>Julia L. Mazur<br>KATTEN MUCHIN<br>ROSENMAN LLP<br>525 West Monroe St.<br>Chicago, IL 60661<br>(312) 902-5200<br>kristin.achterhof@katten.com<br>julia.mazur@katten.com<br><br>Christina L. Costley<br>Paul S. Yong<br>KATTEN MUCHIN<br>ROSENMAN LLP<br>2029 Century Park East<br>Suite 2600<br>Los Angeles, CA 90067<br>(310) 788-4400<br>christina.costley@katten.com |

| Party | Local Counsel | Lead Counsel |
|---|---|---|
| | | paul.yong@katten.com |

Subject to the rulings made at the Pretrial Conference, the Court hereby enters the following Final Pretrial Order:

## I. STATEMENT OF NATURE OF ACTION

### A. Nature of the Action

1. The parties are competitors in performing assays (i.e., tests) for detecting rejection in kidney transplant patients using donor-derived cell-free DNA ("dd-cfDNA") technology. Plaintiff/Counterclaim Defendant CareDx's product and related services are known as AlloSure®. Defendant/Counterclaim Plaintiff Natera's product and related services are known as Prospera®.

2. This is an action that involves CareDx's claims and Natera's counterclaims for false advertising and deceptive trade practices brought pursuant to the Lanham Act, the Delaware Deceptive Trade Practices Act, and related common law claims under Delaware law concerning certain statements made by each party about AlloSure® and/or Prospera® and their respective capabilities or uses by doctors for monitoring patients for kidney transplant rejection.

### B. CareDx's Claims Asserted against Natera

3. Plaintiff CareDx initiated this lawsuit on April 10, 2019, alleging violations of the federal Lanham Act, 15 U.S.C. § 1125(a), the Delaware Unfair or

Deceptive Trade Practices Act, and the common law of unfair competition by Natera. (*See* D.I. 1.) In its Amended Complaint (D.I. 45), filed February 7, 2020, CareDx asserted the following claims against Natera: (1) false advertising in violation of 15 U.S.C. §1125(a) of the Lanham Act by virtue of its alleged representations that the Natera Study showed that Prospera® is superior to AlloSure®, including because (i) Prospera® detects AR with greater sensitivity; (ii) Prospera® detects AR with higher AUC; (iii) the Natera Study is reliable; and (iv) the results of the Natera Study can be used to support claims comparing the performances of Prospera® and AlloSure®; (2) Natera's alleged false statements and advertising constitute unfair competition under the common law of Delaware; and (3) Natera's alleged false statements and advertising violate the Delaware Deceptive Trade Practices Act 6 Del. C. § 2532(a)(5), (8), (12) et. seq.

### C.   Natera's Motion to Dismiss, Answer, and Counterclaims

4.    On May 31, 2019, Natera moved to dismiss CareDx's initial complaint under FRCP 12(b)(1) and 12(b)(6). (*See* D.I. 8-10, 13, 15). On December 20, 2019, Magistrate Judge Burke issued a report and recommendation that granted-in-part and denied-in-part Natera's motion. (*See* D.I. 28). On January 24, 2020, this Court adopted the Magistrate's report and recommendation over Natera's objections. (*See* D.I. 40).

5.     In response to CareDx's First Amended Complaint (D.I. 45), Natera filed its answer, affirmative defenses and counterclaims (D.I. 53) on February 18, 2020.  On November 24, 2020, the Court granted Natera's motion to file an amended answer and counterclaims (D.I. 159), which is Natera's operative pleading for trial.

6.     In its Amended Answer and counterclaims (D.I. 159), Natera denied liability and raised affirmative defenses to CareDx's claims and also alleged counterclaims against CareDx based on its false and/or misleading actions and statements about AlloSure® and/or Prospera®.[1]  Natera's affirmative counterclaims against CareDx specifically allege that: (1) CareDx has engaged in false and misleading advertising under §43 (a) of the Lanham Act, 15 U.S.C. § 1125(a) by virtue of its alleged representations that (i) AlloSure® can be used to "monitor for subclinical rejection"; (ii) AlloSure® can reliably detect T-cell mediated rejection ("TCMR"); (iii) AlloSure® has better performance metrics (i.e., sensitivity, specificity, AUC, PPV, NPV) than Prospera®, including that AlloSure® has 100% performance metrics when allegedly using the methods from the Sigdel Paper; (iv) AlloSure® had certain NPV and PPV values at a 1% threshold; (v) CareDx had no

---

[1] Natera's counterclaims also include declaratory judgment counts of no liability (Counts 1-3) that mirror CareDx's claims against Natera in its first amended complaint.

involvement in a paper by Joseph Melancon [first published in June 2020] [2]; and (vi) CareDx had no involvement in a paper by Erik Stites as lead author [first published in February 2020] and claimed AlloSure was the "only" product that could "risk stratify" patients with certain rejection types; (2) CareDx's false statements and advertising violate the Delaware Deceptive Trade Practices Act under the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531 et. seq.; and (3) CareDx's false statements and advertising constitute unfair competition under the common law of Delaware.

### D.     CareDx's Answer to Natera's Counterclaims

7.     In its Answer to Natera's Amended Counterclaims (D.I. 190), filed on December 8, 2020, CareDx denied the counterclaims and asserted affirmative defenses.

## II.   STATUTORY BASIS FOR JURISDICTION

This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. Jurisdiction is not disputed.

---

[2] The Parties are generally in agreement on this order, but there remain some disputes. In these cases differential color highlighting is used. Specifically, text highlighted in yellow is text that CareDx proposes adding to which Natera does not agree. Text highlighted in blue is text that Natera proposes adding to which CareDx does not agree.

### III.   STIPULATIONS AND STATEMENTS

#### A.   The Parties' Joint Statement of Uncontested Facts

8.     The parties stipulate to and admit the facts set forth in the attached Joint Statement of Uncontested Facts (attached as **Exhibit 1).** These uncontested facts require no proof at trial and will become part of the evidentiary record in this case. They may be read to the jury by the Court or any party.

#### B.   The Parties' Statement of Contested Issues of Fact

9.     CareDx's statement of contested issues of fact is attached as **Exhibit 2**.

10.     Natera's statement of contested issues of fact is attached as **Exhibit 3**.

11.     If the Court determines that any issue in a party's statement of issues of fact is more properly considered an issue of law, then such issue shall be so considered an issue of law.

#### C.   The Parties Statements of the Issues of Law Remaining to be Litigated

12.     CareDx's statement of the Issues of Law Remaining to be Litigated is attached as **Exhibit 4**.

13.     Natera's statement of the Issues of Law Remaining to be Litigated is attached as **Exhibit 5**.

14.     If the Court determines that any issue in a party's statement of issues of law is more properly considered an issue of fact, then such issue shall be so considered an issue of fact.

D. **The Parties' Lists of Pre-Marked Trial Exhibits**

15.    The Parties' List of Joint Pre-Marked Trial Exhibits is attached as **Exhibit 6**.  The joint trial exhibits are identified with JTX numbers, starting with JTX-1.  No party has any objection to these joint exhibits, subject to the parties' lists of evidentiary issues, such that they may be received in evidence by operation of this Order.

16.    CareDx's List of Pre-Marked Trial Exhibits, and Natera's objections thereto, are attached as **Exhibit 7**.  CareDx's trial exhibits are identified with PTX numbers, starting with PTX-1.

17.    Natera's List of Pre-Marked Trial Exhibits, and CareDx's objections thereto, are attached as **Exhibit 8**.  Natera's trial exhibits are identified with DTX numbers, starting with DTX-1.

18.    Each exhibit list contains all exhibits that a party may present at trial other than solely for impeachment.  Supplementation of the exhibit lists will only be allowed based on good cause shown.  Subject to the remaining provisions of this Order, exhibits not listed will not be admitted unless good cause is shown.

19.    No party will remove a document once it has been added to the party's exhibit list without providing the other party the opportunity to add the document to its exhibit list.

20.    A party's identification of a document on its exhibit list is not an admission that the exhibit is authentic, admissible, or factually correct.  The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible.  Each party reserves the right to object to the relevance of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered, or for any other reason as set forth in the Federal Rules of Evidence or other applicable principles of law.

21.    The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document.

22.    The listing of an exhibit by a party on its exhibit list does not waive any objections to that exhibit should the opposing party attempt to offer it.  Subject to applicable objections, however, any party may use any document on any party's exhibit list.

23.    The parties' exhibit lists identify concisely the basis or bases for the other party's objection(s), if any, to each listed exhibit.  The parties will continue to negotiate regarding objections and will provide the Court with updated exhibit lists noting any further evidentiary stipulations at a time closer to trial, as directed by the Court.  Exhibits to which no objection has been made are received in evidence by operation of this Order so long as they are introduced at trial through a witness.

24.     The exhibit lists indicate whether each trial exhibit has previously been marked as a deposition exhibit. To remove duplicates and improve legibility of the exhibits used at trial, the parties agree that the trial exhibit shall be treated as identical to the indicated deposition exhibit regardless of whether it bears a deposition exhibit sticker.

25.     A party may not add exhibits to its exhibit list after the date of this Order, except for good cause shown or by agreement of the other party.  A party may not introduce at trial any exhibit not appearing on its list, except for as allowed in Paragraph 29, good cause shown, or by agreement of the other parties.

26.     The parties stipulated to the authenticity of all exhibits listed in Exhibits 7 and 8, absent a specific objection set forth in an exhibit list challenging that document's authenticity.

27.     Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or, under the circumstances, it would be unfair to admit the copy in lieu of the original.

28.     Any exhibit, once admitted at trial, may be used equally by each party for any purpose in accordance with the Federal Rules of Evidence, unless it is hearsay under FRE 801-802 for one party, but not the party that moved for it to be admitted, and/or the latter party's use is objectionable under FRE 403.

29.     Notwithstanding the foregoing, exhibits to be used or offered into evidence solely for impeachment need not be included on the list of trial exhibits or disclosed in advance of being used or offered at trial.

30.     The parties will exchange electronic copies of their pre-marked non-demonstrative exhibits listed on their respective exhibit lists in PDF computer file format by 8:00 p.m. on October 11, 2021.  The parties shall provide objections (e.g., completeness of the actual stamped exhibit exchanged, incorrect stamping, etc.) to the other party's pre-marked non-demonstrative exhibits by 9:30 p.m. on October 18, 2021. The parties will exchange corrected pre-marked non-demonstrative exhibits by 8:00 p.m. on October 22, 2021.

31.     On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.  The parties will attempt to identify common exhibits to avoid, where practical, the submission of duplicative exhibits into the record.

32.     A party will provide a list of non-demonstrative exhibits to be used in connection with examination of a friendly witness along with an identification of the witness with which the party expects to use each exhibit by 7:00 p.m. the day before their intended use, and objections will be provided no later than 9:00 p.m. the night before their intended use. The parties shall meet and confer to resolve any objections by 10:00 p.m. the night before the intended use of the exhibit.  If good faith efforts

to resolve the objections fail, the party objecting to the non-demonstrative exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand.

33.     If a party proposes to read a statement by a party opponent from any request for admission responses, interrogatory responses, or pleadings, it will identify by email to the opposing party the statements it intends to read by 8:00 p.m. two calendar days before it will be read. The other party shall identify any objections to such statements by 8:00 p.m. the following day and the parties shall meet and confer to resolve any objections by 10:00 p.m. that same evening. If good faith efforts to resolve the objections fail, the party objecting shall bring its objections to the Court's attention prior to the statements being read in court.

### E.     Demonstrative Exhibits

34.     The parties agree that the demonstrative exhibits that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Final Pretrial Order.  CareDx's demonstrative exhibits will be identified with PDX numbers, starting with PDX-1.   Natera's demonstrative exhibits will be identified with DDX numbers, starting with DDX-1.

35.     The parties will exchange demonstrative exhibits to be used in opening statements by 8:00 a.m. the day before opening statements. The parties will provide any objections to such demonstrative exhibits by 5:00 p.m. on the day before

opening statements. The parties shall meet and confer to resolve any objections by 6:30 p.m. the night before the intended use of the demonstrative exhibit.

36.    A party will provide demonstrative exhibits to be used in connection with examination of a friendly witness by 7:00 p.m. the day before their intended use, and objections will be provided no later than 9:00 p.m. the night before their intended use. The parties shall meet and confer to resolve any objections by 10:00 p.m. the night before the intended use of the demonstrative exhibit. If any of the demonstrative exhibits change after the deadline, the party intending to use the demonstrative exhibit will promptly notify the opposing part of the change(s).

37.    The party seeking to use a demonstrative exhibit will provide color PDFs to the other side by email and/or commonly used electronic media such as USB, hard drive, and/or FTP.  For large exhibits and any videos or animations, the party seeking to use the demonstrative exhibit will provide it to the other side by email and/or electronic media such as USB, hard drive, and/or FTP.  For irregularly sized physical exhibits, the party seeking to use the demonstrative exhibit will provide a color representation as a PDF and will also make the exhibit available for inspection.

38.    For each demonstrative exhibit, the parties will disclose to the opposing party all trial exhibits that form the basis of the demonstrative exhibit on the face of the demonstrative exhibit.

39.     These provisions regarding demonstrative exhibits do not apply to demonstrative exhibits created during testimony or demonstrative exhibits to be used for examination of an adverse witness, neither of which need to be provided to the other side in advance of their use.  In addition, blow-ups, callouts, or highlights of exhibits[, demonstratives previously used with a witness at trial,] or parts of exhibits or testimony at trial are not required to be provided to the other side in advance of their use for examination of an adverse witness.

40.     If good faith efforts to resolve the objections fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand.

**F.     Witnesses the Parties Intend to Offer at Trial**

41.     The list of witnesses CareDx intends to offer at trial is attached as **Exhibit 9**.  CareDx also identifies in Exhibit 9, the subject matter expertise for each expert witness it intends to call to testify at trial.

42.     Natera objects to CareDx presenting testimony from Michael Olymbios or any other CareDx employee, former employee or expert witness by deposition. Natera further objects to any testimony by Mr. Malackowski on the topic of corrective advertising (consistent with the Court's ruling on the related Daubert Motion, D.I. 290, D.I. 291, and for the reasons set out in Natera's related Motion in

Limine).  Natera further objects to the unidentified 30(b)(6) witnesses referenced in CareDx's witness list. Additional objections are included in Exhibit 9.

43.    The list of witnesses Natera intends to offer at trial is attached as **Exhibit 10**. Natera also identifies in Exhibit 10, the subject matter expertise for each expert witness it intends to call to testify at trial.

44.    CareDx objects to Dr. Christians to the extent Natera attempts to introduce testimony regarding CareDx's alleged involvement in the Melancon study through Dr. Christians.  CareDx objects to Dr. Makuch to the extent Natera attempts to introduce testimony through Dr. Makuch on the untimely theories Natera raised for the first time in response to CareDx's summary judgment motion nos. 1 and 3 and that are the subject of CareDx's proposed MILs.  CareDx objects to Dr. Plumpe to the extent Natera attempts to introduce testimony that goes beyond the calculations of CareDx's revenues and gross profits set forth in his expert report, including any testimony that Natera is entitled to any of these revenues or gross profits, or testimony regarding any apportionment of these revenues or gross profits. CareDx objects to the unidentified 30(b)(6) witnesses provided in Natera's witness list.

45.    Any witness not listed in Exhibits 9 or 10 will be precluded from testifying, absent good cause shown. Such good cause shall include testimony

required to authenticate any documents subject to an authenticity objection and rulings by the Court.

46.     The parties will work together in good faith to resolve authentication issues without the need for live testimony, if possible. However, each party reserves the right to call witnesses for the purpose of authentication (who are not presently identifiable) as may be necessary, on reasonable notice to the opposing party.

47.     A party will identify by email to the opposing party the witnesses it intends to call, which witnesses will be called live and which will be offered by deposition, and the order in which the party expects to call them, by 7:00 p.m. two calendar days before such witnesses will be called to testify. For example, if the party expects to conduct the examination on Wednesday, notice should be given to the opposing party by 7:00 p.m. on Monday. The other party shall identify any objections to such witness(es) by 9:00 p.m. the following day and the parties shall meet and confer to resolve any objections by 10:00 p.m. that same evening.  If good faith efforts to resolve the objections fail, the party objecting shall bring its objections to the Court's attention prior to the witness being called to the witness stand.

48.     Fact witnesses, except one representative from each side that will attend trial, to be called for live testimony will be sequestered and may not be present in

the courtroom or review transcripts of testimony, including for opening statements, until after they provide their live testimony.

49.     With respect to expert witnesses called as live witnesses at trial, no deposition designations or counter-designations are allowed.  The parties request that the Court rule at trial on objections to expert testimony as beyond the scope of prior expert disclosures.

50.     The parties shall exchange a final list of witnesses they intend to call live at trial by October 11. A party shall promptly provide notice if it will not call live a witness who is so identified on the list of trial witnesses. To the extent a party gives notice that a witness identified as a live witness on the list of trial witnesses is not going to be called live, subject to any objections that a party may have to the other party's failure to present the witness live, the parties may provide designations and counter-designations of the witness's deposition transcript, as well as objections to the opposing party's designations, in a reasonable time frame as agreed upon between the parties.

51.     The parties will confer nightly to update opposing counsel as to the day that the party expects to complete its presentation of evidence.

### G.     Deposition Designations

52.     CareDx's list of deposition designations that it may offer into evidence is attached as **Exhibit 11**.  Natera's objections thereto and counter-designations and

CareDx's objections to Natera's counter-designations are also included in Exhibit 11.

53.     Natera's list of deposition designations that it may offer into evidence is attached as **Exhibit 12**.  CareDx's objections thereto and counter-designations and Natera's objections to CareDx's counter-designations are also included in Exhibit 12.

54.     With respect to those witnesses whom the parties have identified in **Exhibits 9** and **10** that will be called to testify live at trial, no deposition designations or counter-designations are required or allowed.  Should a witness identified in **Exhibits 9** or **10** as testifying live at trial become unavailable, subject to any objections that a party may have to the other party's failure to present the witness live, the parties may designate specific pages and lines of transcript that they intend to read or play in lieu of the witness's appearance upon reasonable notice.

55.     This Order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

56.     A party may choose not to introduce deposition testimony designated in this Pretrial Order, but may not designate additional deposition testimony after the filing of this Pretrial Order, except as otherwise provided in this Pretrial Order.

Should a party choose not to introduce deposition testimony designated in this Pretrial Order, the other party may elect to offer some or all of that previously designated testimony as its designated testimony, provided that such witness is not called live.

57.    For deposition testimony to be introduced into evidence, the party providing the designated testimony shall serve the other party with the transcript page and line numbers of the deposition testimony they intend to introduce by 7:00 p.m. three calendar days before such testimony is to be introduced.    The other party will identify any objections to the designated testimony and any specific pages and lines from that deposition to counter-designate by 7:00 p.m. the following day. By 9:00 pm that same day, the introducing party will identify any objections to the other party's counter-designated testimony. The parties shall meet and confer to resolve any objections to designated testimony by 10:00 p.m. two days before that deposition testimony is to be read or played to permit sufficient time to prepare any necessary video / DVD of the testimony. If the objections to the disputed testimony cannot be resolved by the parties, the objections will be presented to the Court as appropriate before trial resumes the day before the testimony's anticipated use. Unless otherwise instructed by the Court, the parties shall submit a copy of the designated portions of the transcript(s) to the Court at the time the designated testimony is offered in Court. If a party opts to introduce deposition testimony by video, the party must provide

notice to the opposing party or parties so that any counter-designations of that same witness's deposition testimony may also be submitted by video. Alterations to the exchange schedule outlined herein may be made upon agreement by all parties or leave of the Court, on good cause shown.

58.     When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts, whether offered by videotape or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given. The specific portions of the deposition shall be read or played in page order. If an exhibit is referenced in a deposition designation, the exhibit is admitted into evidence if it is included on the offering party's trial exhibit list and is not otherwise objected to.

59.     All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

60.     Any party may use testimony that is designated by another party, to the same effect as if they had initially designated the testimony as its own, subject to all evidentiary objections.

61.     Designated deposition testimony will be offered into evidence as designated testimony that the parties play by video in Court or have read into the

record and will count against that party's trial presentation time (if such time is assigned by the Court).

62.     Any deposition testimony to be used at trial may be used whether or not the transcripts of such deposition have been signed and filed pursuant to Fed. R. Civ. P. 30(b).

63.     The listing of a deposition designation does not constitute an admission as to the admissibility of the testimony nor is it a waiver of any applicable objection.

64.     The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or [cross-] examination[ of an adverse witness].  Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.   The parties reserve the right to object to the use of any deposition testimony and any other prior inconsistent statements for impeachment purposes, including objections based on lack of completeness and/or lack of inconsistency.

## IV.     CAREDX'S STATEMENT OF INTENDED PROOF

65.     CareDx intends to prove that Natera is liable for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), and that Natera's false advertising has harmed and will continue to harm CareDx.

66.    CareDx intends to prove that Natera has engaged in unfair competition under the common law of Delaware, and that Natera's unfair competition has harmed and will continue to harm CareDx.

67.    CareDx intends to prove that Natera is liable for false advertising and disparaging statements in violation of Delaware's Deceptive Trade Practices Act, 6 Del. C. §§2532(a)(5), (8), (12), and that Natera's false advertising has harmed and will continue to harm CareDx.

68.    CareDx intends to prove that as a result of Natera's violations of the Lanham Act, 15 U.S.C. § 1125(a), unfair competition under the common law of Delaware, and violations of Delaware's Deceptive Trade Practices Act, CareDx has suffered direct and consequential damages and is entitled to recover compensatory damages, including costs and enhanced damages in an amount to be proven at trial.

69.    CareDx intends to prove that it is entitled to a disgorgement of Natera's profits from Prospera.

70.    CareDx intends to prove that Natera knowingly or recklessly engaged in false advertising, and that CareDx is entitled to punitive monetary damages as a result of Natera's false advertising and unfair competition.

71.    CareDx intends to rebut that it has made any false statements in violation of 15 U.S.C. § 1125(a).

72.     CareDx intends to rebut that it has made any false statements in violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. §§2532(a)(5), (7), (8), (12).

73.     CareDx intends to rebut that it has engaged in unfair competition.

74.     CareDx intends to rebut that Natera is entitled to any damages, including actual damages, punitive and exemplary damages, and statutory damages.

75.     CareDx intends to rebut that Natera is entitled to an order enjoining CareDx from making any advertising claims.

76.     CareDx intends to rebut that Natera is entitled to an order requiring CareDx to take corrective measures.

77.     CareDx intends to rebut that Natera is entitled to pre- and post-judgment interest on any money damages.

78.     CareDx intends to rebut that Natera is entitled to the costs of this litigation, including expert witness fees.

79.     CareDx intends to rebut that Natera is entitled to attorneys' fees.

80.     CareDx intends to prove that Natera's claims are barred by the doctrine of unclean hands.

## V.    NATERA'S STATEMENT OF INTENDED PROOF

81.    Natera intends to prove that CareDx violated the Lanham Act, 15 U.S.C. § 1125(a) by making false statements in commercial advertising or promotion that have harmed, and will continue to harm, Natera.

82.    Natera intends to prove that CareDx has violated Delaware common law by engaging in unfair competition that has harmed, and will continue to harm, Natera.

83.    Natera intends to prove that CareDx has violated Delaware's Deceptive Trade Practices Act, 6 Del. C. §§2532(a)(5), (7), (8), (12) by engaging in false advertising and making disparaging statements that have harmed, and will continue to harm, Natera.

84.    Natera intends to prove that it is entitled to injunctive relief prohibiting CareDx from continuing to make false statements in commercial advertising or promotion.

85.    Natera intends to prove that it is entitled to injunctive relief prohibiting CareDx from engaging in false advertising and making disparaging statements.

86.    Natera intends to prove that it is entitled to disgorge CareDx's profits attributable to AlloSure.

87.    Natera intends to prove that it has suffered and is entitled to direct and consequential damages as a result of CareDx's violations of the Lanham Act, 15

U.S.C. § 1125(a), unfair competition under the common law of Delaware, and Delaware's Deceptive Trade Practices Act, in an amount to be proven at trial.

88.    Natera intends to prove that it is entitled to its costs in an amount to be proven at trial.

89.    Natera intends to prove that it is entitled to enhanced damages in an amount to be proven at trial.

90.    Natera intends to prove that this is an exceptional case, such that it is entitled to its attorneys' fees.

91.    Natera intends to prove that it is entitled to the costs of this litigation, including expert witness fees.

92.    Natera intends to prove that CareDx acted willfully, knowingly and/or recklessly and, therefore, that Natera is entitled to punitive damages as a result of CareDx's false commercial statements, false advertising, and unfair competition.

93.    Natera intends to prove, as an affirmative defense, that CareDx's claims are barred by the doctrine of unclean hands.

94.    Natera intends to rebut CareDx's assertion that Natera violated 15 U.S.C. § 1125(a) by making false and/or misleading statements.

95.    Natera intends to rebut CareDx's assertion that Natera violated the Delaware Deceptive Trade Practices Act, 6 Del. C. §§2532(a)(5), (7), (8), (12) by making false statements.

96.    Natera intends to rebut CareDx's assertion that Natera has engaged in unfair competition.

97.    Natera intends to rebut CareDx's claim that it is entitled to compensation for corrective advertising.

98.    Natera intends to rebut CareDx's damages claims on the grounds that CareDx is not entitled to recover for expenses incurred engaging in CareDx's own false advertising campaign.

99.    Natera intends to rebut CareDx's claim for damages of any nature, including actual, compensatory, punitive, exemplary, and/or statutory.

100.   Natera intends to rebut CareDx's assertion that it is entitled to an injunction prohibiting Natera from making advertising claims.

101.   Natera intends to rebut CareDx's assertion that it is entitled to an order requiring Natera to take corrective measures.

102.   Natera intends to rebut CareDx's claim that it is entitled to pre- and post-judgment interest.

103.   Natera intends to rebut CareDx's claim that it is entitled to the costs of this litigation, including attorney's fees or expert witness fees.

## VI.    AMENDMENTS TO PLEADINGS

104.   Neither party intends to request an amendment to its pleadings at the present time.

## VII.    CERTIFICATE    OF    ATTEMPTED    RESOLUTION    OF    CONTROVERSY

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

## VIII.    MOTIONS *IN LIMINE*

### A.    The Parties' Motions in Limine

106.    CareDx's Motions *in Limine*, oppositions thereto, and replies are attached as **Exhibit 13**.

107.    Natera's Motions *in Limine*, oppositions thereto, and replies are attached as **Exhibit 14**.

108.    CareDx and Natera have agreed to stipulations regarding their Motions *in Limine*, which are attached as **Exhibit 15**.

## IX.    OTHER MATTERS

### A.    Order of Proof at Trial

109.    The parties propose the following order of proof:

a.    Opening statements will be delivered in the following order: CareDx, then Natera

b.    CareDx shall then present its affirmative case with respect to Natera

   c.    Upon conclusion of CareDx's testimony and evidence, Natera will present its rebuttal and defenses to CareDx's claims and its affirmative case on its counterclaims

   d.    Upon conclusion of Natera's testimony and evidence, CareDx will present its rebuttal and defenses on Natera's counterclaims

   e.    If either party's expert witness(es) are providing testimony relevant to both CareDx's claims and Natera's counterclaims, such a witness will be required to appear separately for each set of claims at an appropriate time given the above schedule, absent good cause.

   f.    Closing statements:

        CareDx proposes that the closing statements be delivered in the following order: CareDx, then Natera, then CareDx.

        Because of Natera's position as a counterclaim-plaintiff, Natera proposes that closing statements be delivered in the following order: CareDx, then Natera, or alternatively, CareDx (its case in chief), Natera (rebuttal and its case on its counterclaims), CareDx (reply in support of its claims and rebuttal to Natera's counterclaims) and then Natera (reply in support of its counterclaims).

**B.    Confidentiality**

110.    Documents marked "Confidential Information" or "Outside Attorneys' Eyes Only Information" pursuant to the Protective Order entered in this case will maintain their confidentiality designations unless used at trial.  Unless specifically objected during the time frame set forth in Paragraphs 35 and 39, the parties do not object to the presentation of "Confidential Information" or "Outside Attorneys' Eyes Only Information" documents to witnesses during trial for examination or in opening or closing statements, and the content of documents marked "Confidential

Information" or "Outside Attorneys' Eyes Only Information" may be projected onto large screens that may be visible at trial.

### C.    Sealing the Courtroom

111.    CareDx may seek to seal the Courtroom during presentations and/or examinations that include information that is designated "Highly Confidential."

112.    Natera may seek to seal the Courtroom during presentations and/or examinations that include information that is designated "Highly Confidential."

113.    The parties do not intend to seek to seal the Courtroom, except for the limited purposes above.

### D.    Miscellaneous

114.    This order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

Dated:  September 23, 2021

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Str., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff CareDx, Inc*

Respectfully submitted,

Morris, Nichols, Arsht & Tunnell LLP

/s/ Derek J. Fahnestock
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, De 19899
(302) 658-9200
jblumenfeld@mnat.com
dfahnestock@mnat.com
araucci@mnat.com

*Attorneys For Defendant Natera, Inc.*

IT IS SO ORDERED this _____ day of September, 2021.

_____
The Honorable Colm F. Connolly