**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CAREDX, INC. | ) | |
| | ) | |
|     Plaintiff, | ) | C.A. No. 19-662 (CFC) (CJB) |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| NATERA, INC., | ) | **FILED UNDER SEAL** |
| | ) | |
|     Defendant. | ) | |
| | ) | |

**PLAINTIFF CAREDX, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OPPOSITION TO NATERA'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE FACT TESTIMONY REGARDING CAREDX'S CORRECTIVE ADVERTISING EXPENDITURES**

Dated: October 21, 2021

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Randi W. Singer (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

                                                                                   **Page**

I. INTRODUCTION ...................................................................................... 1

II. ARGUMENT ............................................................................................. 2

    A.    CareDx's Witnesses Have Personal Knowledge Of Foundational Facts Underlying CareDx's Corrective Advertising Expenditures ................................................................. 2

    B.    CareDx's Witnesses' Testimony Is Admissible Under Third Circuit Precedent And The Federal Rules .............................................. 5

    C.    Rule 30(b)(6) Does Not Preclude Dr. Maag From Testifying Regarding CareDx's Specific Corrective Advertising Costs ................ 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADT Holdings, Inc. v. Harris*,
   2017-cv-0328, 2017 WL 3913164 (Del. Ch. Sep. 7, 2017) ................................ 12

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   627 F.Supp.2d 384 (D.N.J. 2009) ......................................................................... 5

*British Telecommunications PLC v. IAC*,
   2020 WL 1043974 (D. Del. Mar. 4, 2020) ........................................................... 9

*Icon Enters. Int'l, Inc. v. Am. Prods. Co.*,
   2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) ...................................................... 11

*Joy Mfg. v. Sola Basic Indust.*,
   697 F.2d 104 (3d Cir. 1982) ....................................................................... 1, 6, 7

*Keepers, Inc. v. City of Milford*,
   807 F.3d 24 (2d Cir. 2015) ................................................................................. 12

*Rogers v. Wilmington Trust Co.*,
   18-cv-116, 2021 WL 739048 (D. Del. Feb. 25, 2021) ........................................ 9

*The Good Drop LLC v. Hayes*,
   15-cv-00268, 2016 WL 4134557 (D. Ore. Aug. 1, 2016) ................................... 9

**Statutes**

Del. R. Evid. 607 ....................................................................................................... 12

Fed. R. Civ. P. 30(b)(6) ...................................................................................... passim

I. **INTRODUCTION**

CareDx hereby submits this supplemental brief in support of its opposition to Natera's motion *in limine* No. 3. In that motion, Natera seeks to preclude CareDx from introducing testimony from its fact witnesses regarding the corrective advertising expenditures CareDx committed to combatting Natera's false advertisements.

As explained during the pretrial conference, CareDx's witnesses have first-hand knowledge of CareDx's corrective advertising expenditures, and CareDx intends to introduce well-founded facts establishing this. Precluding this evidence without allowing the jury to assess the credibility of CareDx's witnesses is inappropriate. *See Joy Mfg. Co. v. Sola Basic Indust., Inc.*, 697 F.2d 104, 108-109 (3d Cir. 1982) (finding trial court abused its discretion by striking fact witness testimony based on personal knowledge). Precluding CareDx's witnesses from presenting foundational facts supporting their corrective advertising testimony is also inappropriate because the existence of a 30(b)(6) witness does not negate all evidence on the subject of corrective advertising. Natera has not identified a reasonably particular topic and linked square deposition answers that would somehow suggest no competent evidence of corrective advertising expenditures exists. And even if it did, CareDx's witnesses are permitted to provide evidence explaining or supplementing their deposition testimony. Rule 30(b)(6) testimony is

not a binding judicial admission.  At base, Natera's motion is an improper attempt to supplant the jury's role as the fact finder with its own belief that the testimony of CareDx's witnesses is not credible or supported.  Natera's motion should therefore be denied.

## II.   ARGUMENT

### A.   CareDx's Witnesses Have Personal Knowledge Of Foundational Facts Underlying CareDx's Corrective Advertising Expenditures

Dr. Maag, CareDx's former CEO, and Sasha King, CareDx's Chief Marketing Officer, both have first-hand knowledge of CareDx's corrective advertising efforts, because they personally oversaw every aspect of these efforts.  Dr. Maag was a key decision maker and was involved in every aspect regarding how to respond to Natera's false claims, including not only how much CareDx invested monetarily on these efforts, but also its overall strategy in responding to Natera's false claims.  Ms. King also played a lead role in developing CareDx's marketing messages and training CareDx's employees on how to respond to Natera's advertisements.  D.I. 168-4, Ex. 32 (King Tr.) at 64:25-65:8; 65:15-66:25.  Their testimony is therefore highly relevant to the harm that CareDx endured as a result of Natera's false advertising and, consequently, to the relief CareDx is entitled to.

The record is replete with concrete and documented examples demonstrating the extent of CareDx's corrective advertising efforts, which CareDx will introduce to provide foundational facts supporting CareDx's corrective advertising

expenditures. As an initial matter, Natera's own expert economist agreed that CareDx has taken actions to reply to Natera's false statements, and that a fact-finder would not be wrong if they determined that CareDx was entitled to the costs of these responses. D.I. 168-4, Ex. 41 (Plumpe Rpt.) ¶40, FN 69; Ex. 1 (Plumpe Tr.) at 156:5-20.

As an example, Natera's own counterclaims identify a parody advertisement CareDx created to demonstrate the absurdity of Natera's claims by applying the test method of Natera's clinical study to AlloSure's performance metrics. Ex. 2, DTX-135. As explained by former CareDx employee, Michael Olymbios, the purpose of this advertisement was to ████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 3 (Olymbios Tr.) at 45:7-47:2. Mr. Olymbios also testified that ████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id*. at 42:22-43:5. This is consistent with numerous internal CareDx presentations and correspondences confirming that ████████████████████████████████████████████████████████████████████████████████████████████████ D.I. 203 at Appx015-18; Appx042-043; Appx051-052 (31:6-32:11); Appx060-077 at Appx071-072;

3

Appx079-080 at Appx080; Appx082-083; Appx085-088; Appx090, Appx092-099; Appx101-102; Appx104-105; Appx107-108.

There should also be no doubt about the compelling nature – much less the plausibility -- of Dr. Maag's corrective advertising estimate. While Natera objects that there is no documentary support for Dr. Maag's estimate, neither Natera nor its own damages expert have identified a single concrete piece of evidence that contradicts Dr. Maag's testimony. Ex. 1 (Plumpe Tr.) at 78:12-21 (admitting he had no reason to question the sales and marketing figures from CareDx's 10-K); *id*. at 86:16-87:4 (admitting that the sales and marketing figures from CareDx's 10-K do not contradict Dr. Maag's testimony that CareDx spent $30 million in sales and marketing for AlloSure in 2019); *id*. at 148:2-149:15 (admitting he had seen no evidence suggesting CareDx did not devote 85% of its sales and marketing budget to AlloSure); *id*. at 83:6-84:8 (admitting he had not seen any evidence contradicting ███████████████████████████████████████████████████████████ ████████████████████████████████████████ Natera's expert also admitted that he did not come up with an alternative for how Dr. Maag's corrective advertising figure was spent, if not in response to Natera's false claims. *Id*. at 94:4-19. Natera has no basis to argue that Dr. Maag's testimony should be excluded because it is not supported, when Natera has done nothing to refute Dr. Maag's testimony.

4

The reasonableness of Dr. Maag's testimony is also supported by documents from 2018, before Natera launched Prospera, showing that CareDx believed that

██████████████████████████████████████████████████

██████████████████████████████████████████████████

D.I. 203 at Appx299-311 at Appx301. Given the size of the opportunity for AlloSure, and the fact that Prospera was positioned as one of the few risks to that opportunity, CareDx's investment in corrective advertising was clearly reasonable and proportionate to the potential harm of Natera's false advertising. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F.Supp.2d 384, 492 (D.N.J. 2009) ("[T]he Court notes that the testimony at trial, particularly as to the GPO contracts, revealed hundreds of millions of dollars at stake in the CM market. ***These staggering numbers support the reasonableness of Bracco's corrective advertising expenditures***.") (emphasis added).

### B. CareDx's Witnesses' Testimony Is Admissible Under Third Circuit Precedent And The Federal Rules

Despite the fact that the record provides ample support for Dr. Maag's corrective advertising estimate, Natera relies heavily on this Court's *Daubert* ruling and insists that it is appropriate to preclude CareDx from presenting any evidence regarding its corrective advertising investments because, Dr. Maag's testimony is "undocumented and dubious." D.I. 300-14 at 17. Natera's arguments fail for several reasons.

***First***, the Third Circuit has held that it is reversible error to preclude a fact witness from testifying about facts that the witness has personal knowledge of, even in circumstances where the fact witness's testimony is not corroborated by documentary evidence. For example, in *Joy Mfg.*, 697 F.2d 104, the Third Circuit reversed a trial court's decision striking fact witness testimony for abuse of discretion. In that case, to support the plaintiffs' claim for damages, a fact witness provided testimony estimating that 90% of the company's general labor expenses, 90% of the labor costs related to downtime, and 90% of the labor variance, and all of the overtime costs, were attributable to hearth problems of two furnaces that the company had sold. *Id*. at 107-08. On cross-examination defendants questioned the witness on the source of his estimates and he testified that he had received a summary of internal records and that he had personal knowledge of the information needed to complete those calculations, but that he otherwise did not have documentary evidence to support these estimates. *Id*. at 108. The witness further testified that the company did not keep records that specified any reason a furnace was down on a particular date. *Id*. Defendants objected to the testimony as purely conjectural and speculative and the Court excluded the testimony, finding that it was "mere speculation" and "unbelievable." *Id*. at 110.

On appeal, the Third Circuit overturned the trial court's determination, holding that it abused its discretion in striking the witness's testimony because the

witness had extensive personal knowledge regarding the facts about which he testified, and he was therefore permitted to make an estimate of what amount of downtime was due to the hearth problems. *Id*. at 111-12. The Court also noted that the witness's inability to state precisely why a furnace was inoperable at a particular time was the proper material for effective cross-examination rather than a basis to hold his testimony completely inadmissible. *Id*.

The Court's reasoning in *Joy* applies with equal force here. Dr. Maag, like the witness in *Joy*, has deep personal knowledge of the facts underlying his corrective advertising estimate. CareDx should be permitted to establish the foundation for Dr. Maag's testimony regarding how much CareDx committed to corrective advertising at trial. Indeed, if Natera wishes to convince the jury that Dr. Maag's testimony is unsupported, it will have every opportunity to do so by cross-examining Dr. Maag himself. As the *Joy* Court aptly noted, whether a witness is able to point to documentary evidence to corroborate its testimony is the proper material for cross-examination, not a basis to hold the witness's testimony completely inadmissible. *Id*.

***Second***, while Natera suggests that this Court's reasoning in its *Daubert* ruling (D.I. 290), should apply equally to Dr. Maag's testimony, whether Mr. Malackowski's expert opinions on corrective advertising are admissible under FRE 702 is a completely different question from whether Dr. Maag's factual testimony

7

regarding his own personal knowledge of CareDx's corrective advertising expenditures is admissible under FRE 701. The former depends on whether an expert's analysis is reliable and based on specialized knowledge, while the latter depends on whether the proposed testimony is rationally based on the witness's perception. FRE 701, 702. The Court's reasoning for excluding Mr. Malackowski's corrective advertising opinions therefore does not apply to the admissibility of Dr. Maag's testimony, although the opinion did comment on the excerpt of Dr. Maag's testimony submitted on that motion.

*Third*, Natera's argument assumes that CareDx's general ledger or other documents itemizing the specific costs of CareDx's corrective advertising are generated in the normal course of business. ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ Dr. Maag's testimony is therefore the best available evidence regarding CareDx's corrective advertising costs, particularly given his specialized knowledge regarding CareDx's sales and marketing expenditures.

### C. Rule 30(b)(6) Does Not Preclude Dr. Maag From Testifying Regarding CareDx's Specific Corrective Advertising Costs

Natera separately argues that CareDx should be completely precluded from introducing any evidence of corrective advertising whatsoever because CareDx "failed to present a 30(b)(6) on the issue." Ex. 5 (Oct. 20, 2021 Hearing Tr.) at 41:6-

8

16.  But Natera cannot justify a blanket prohibition on this evidence because there is no particular 30(b)(6) topic on corrective advertising, much less how much CareDx spent on corrective advertising, and there is therefore no basis to preclude CareDx's witnesses from testifying about corrective advertising.  "[T]he extent to which a designated representative's testimony fairly may be given binding effect is directly related to the deposing party's compliance with the requirement to describe 'with reasonable particularity' the subjects to be addressed at the deposition." *The Good Drop LLC v. Hayes*, 15-cv-00268, 2016 WL 4134557 (D. Ore. Aug. 1, 2016); *see also British Telecommunications PLC v. IAC*, 2020 WL 1043974 (D. Del. Mar. 4, 2020) ("Rule 30(b)(6) requires that a deposition notice under the rule must describe the matters for examination 'with reasonable particularity.' Courts have strictly enforced that requirement, sometimes characterizing the 'reasonable particularity' requirement as mandating that the topics be designated 'with painstaking specificity.'").[1]  As other courts have found under similar circumstances, binding a

---

[1] Natera's argument during the Pretrial Conference that "when a corporate designee for a Rule 30(b)(6) deposition topic lacks the ability to answer questions about the topic, the corporation is bound by the witness's not-to-my-knowledge answers to questions on the topic" is inapt for these reasons.  Ex. 5 (Oct. 20, 2021 Hearing Tr.) at 41:10-16.  Natera's reliance on this Court's decision in *Rogers v. Wilmington Trust Co.*, 18-cv-116, 2021 WL 739048 (D. Del. Feb. 25, 2021) is also inapt because in that case, the witness simply did not know the answers to the questions he was designated to testify on.  Here, Dr. Maag provided substantive answers to Natera's questions based on his personal knowledge.

30(b)(6) witness to its deposition testimony where a Defendant failed to meet the particularity requirement of Rule 30(b)(6) would be inappropriate. *Id*. The same is true here.

Here, the only deposition topic that Natera identifies that remotely encompasses CareDx's corrective advertising expenditures broadly states that Dr. Maag should be prepared to testify regarding "[t]he effect of the UCSF Study and/or Natera's statements about the UCSF study on Plaintiff's business, including, but not limited to, Plaintiff's sales, profits, and business relationships." D.I. 88 (Natera's 30(b)(6) Deposition Notice) at 7. And while the lack of particularity alone demonstrates no preclusive effect, there is also no reason to believe from Dr. Maag's deposition that no evidence of corrective advertising exists. In response to Dr. Maag's corrective advertising estimate, Natera propounded a single follow-up question asking whether Dr. Maag "[had] any documents or a spreadsheet showing that analysis." Ex. 6 (Maag Tr.) at 30:9-17. Natera otherwise did not explore how much CareDx spent on the specific corrective advertising measures it undertook, even though Dr. Maag explained that Natera's advertisements "significantly impacted communications to clinicians, to patients, to – to investors, to – to many constituents." *Id*. at 28:15-22.

███████████████████████████████████████
███████████████████████████████████████

10



These costs do not even take into account the amount of time and money it took CareDx just to come up internally with a strategy and response to Natera's false advertising.

Even assuming Natera's 30(b)(6) topic was sufficiently particular, Dr. Maag's 30(b)(6) testimony is not a binding admission, and therefore does not bind or preclude him from providing trial testimony that goes beyond what he testified on at his deposition. *See, e.g., Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, 2004 WL 5644805, *6 (C.D. Cal. Oct. 7, 2004) ("[A] corporation is 'bound' by its Rule 30(b)(6)) testimony" only in the sense that "the witness has committed to a position at a particular point it time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue."). Indeed, Dr. Maag is permitted under the Federal Rules to provide testimony explaining or supplementing his deposition testimony. As the Second Circuit recently explained:

> Rule 30(b)(6) testimony *is not "binding" in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements*. Nothing in the text of the Rule or in the Advisory Committee notes indicates that the Rule is meant to bind a corporate party irrevocably to whatever its designee happens to recollect during her testimony. Of course, a party whose testimony "evolves" risks its credibility, but that does not mean it has violated the Federal Rules of Civil Procedure.

*Keepers, Inc. v. City of Milford*, 807 F.3d 24 (2d Cir. 2015). The Second Circuit's analysis reflects the majority view on the binding effect of 30(b)(6) deposition testimony, which Delaware courts have adopted. *See ADT Holdings, Inc. v. Harris*, 2017-cv-0328, 2017 WL 3913164 at *2 (Del. Ch. Sep. 7, 2017) (accepting majority view that 30(b)(6) testimony does not preclude the deponent from correcting, explaining, or supplementing its statements, and noting that this approach is consistent with Delaware Rule of Evidence 607). Under this precedent, Dr. Maag should be permitted to provide foundational testimony that explains and even supplements the corrective advertising testimony he provided during his deposition, even if he was not able to identify documents showing line item corrective advertising expenses when he was being questioned. Additionally, if Natera takes issue with the fact that Dr. Maag did not testify regarding the foundation for his testimony during his deposition, that is a problem of Natera's own making. Dr. Maag should not be precluded from testifying regarding the foundational facts because Natera chose not to ask.

Finally, Natera has not identified a single cognizable example of prejudice or risk of jury confusion. Natera's protestation that the jury "will not be able to distinguish compensable corrective advertising from other activities included in Maag's testimony" rings hollow. D.I. 300-14 at 18. The facts CareDx will present on its specific corrective advertising activities are clear, and Natera has not identified what "other activities" it is referring to that it contends will confuse the jury. Natera's suggestion that the jury will not be able to distinguish between CareDx's corrective advertising efforts and these unidentified activities is not only unsupported, but it completely undermines the jury's abilities as fact-finders. Finally, to the extent Natera seeks to exclude Dr. Maag's testimony based on the size of CareDx's corrective advertising damages, this is unfounded. CareDx's corrective advertising expenditures reflect the extensive investment CareDx was forced to make to defend itself against Natera's false claims.

Dated: October 21, 2021                Respectfully submitted,

                                                      FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

Randi W. Singer (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8152
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief has been prepared in Times New Roman 14-point typeface using Microsoft Word, and contains 2,966 words as determined by the Word Count feature in Microsoft Word.

/s/ Brian E. Farnan<br>
Brian E. Farnan (#4089)