IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAREDX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-662 (CFC) |
| | ) | |
| NATERA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NATERA'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P.
50(b), NEW TRIAL PURSUANT TO FED. R. CIV. P. 59(a),
OR REMITTITUR**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendant Natera, Inc.*

OF COUNSEL:

Kristin J. Achterhof
Julia L. Mazur
Martin S. Masar III, Ph.D.
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
(312) 902-5200

Christina L. Costley
Paul S. Yong
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4400

Bruce G. Vanyo
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022
(212) 940-8800

Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
2900 K Street NW, Suite 200
Washington, DC  20007
(202) 625-3500

April 4, 2022

<u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ................................................................................... ii

Introduction ..............................................................................................1

Argument ..................................................................................................4

I.     The Court Should Grant Natera JMOL .................................................4

     A.     No Reasonable Jury Could Have Awarded Damages to CareDx. ........4

          1.     CareDx Failed to Carry Its Burden to Prove Actual Deception and Reliance. ..............................................................................4

          2.     CareDx's Failure to Prove Actual Deception and Reliance Precludes Corrective Advertising Damages. .............................9

          3.     CareDx Is Not Entitled to Punitive Damages. ..........................11

     B.     No Reasonable Jury Could Have Found Liability. .............................11

          1.     CareDx Failed to Adduce Sufficient Evidence of Literal Falsity. ....................................................................................11

               a.     The Challenged Statements Are Ambiguous. ................12

               b.     There Was Insufficient Evidence to Support an "Establishment Claim" Theory of Liability. .................15

          2.     CareDx Failed to Establish Common-Law Unfair Competition. ...........................................................................18

          3.     CareDx Failed to Establish a DTPA Violation. ........................20

II.     In the Alternative, the Court Should Grant Natera a New Trial or Remittitur. ............................................................................................20

Conclusion ..............................................................................................22

i

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agilent Technologies, Inc. v. Kirkland*,
   No. CIV.A. 3512-VCS, 2009 WL 119865 (Del. Ch. Jan. 20, 2009).........18, 19

*Alpha Pro Tech, Inc. v. VWR International, LLC*,
   No. 12-cv-1615, 2017 WL 3671264 (E.D. Pa. Aug. 23, 2017)........................8

*Asplundh Manufacturing Division v. Benton Harbor Engineering*,
   57 F.3d 1190 (3d Cir. 1995) .........................................................................10

*Citrix Systems, Inc. v. Workspot, Inc.*,
   No. 18-cv-588-LPS, 2019 WL 3858602 (D. Del. Aug. 16, 2019) .............8, 13

*Cortez v. TransUnion, LLC*, 617 F.3d 688 (3d Cir. 2010) ...................................21

*Emerson Electric Co. v. Emerson Quiet Kool Co.*,
   No. 17-cv-846-LPS, 2019 WL 1397244 (D. Del. Mar. 28, 2019) .................20

*FMC Corp. v. Summit Agro USA, LLC*,
   No. 14-cv-51-LPS, 2014 WL 6627727 (D. Del. Nov. 14, 2014) ...................19

*f'real Foods, LLC v. Hamilton Beach Brands, Inc.*,
   No. 16-cv-41-CFC, 2020 WL 3060743 (D. Del. June 9, 2020) .....................20

*Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079 (3d Cir. 1995). ..............4

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
   774 F.3d 192 (3d Cir. 2014). ..........................................................11, 12, 13

*Lampkins v. Mitra QSR KNE, LLC*,
   383 F. Supp. 3d 335 (D. Del. 2019)...............................................................21

*Larry Pitt & Associates v. Lundy Law LLP*,
   294 F. Supp. 3d 329 (E.D. Pa. 2018)................................................................7

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) ..........................4

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009)................10

*Monsanto Co. v. Syngenta Seeds, Inc.*,
  443 F. Supp. 2d 648 (D. Del. 2006).................................................................20

*Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp. 3d 405 (E.D. Pa. 2016)..............12

*Parkway Baking Co. v. Freihofer Baking Co.*,
  255 F.2d 641 (3d Cir. 1958) .............................................................................5

*Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437 (D. Conn. 1994) ..............................16

*Plough, Inc. v. Johnson & Johnson Baby Products Co.*,
  532 F. Supp. 714 (D. Del. 1982).................................................................11, 12

*Quidel Corp. v. Siemens Medical Solutions USA, Inc.*,
  No. 16-cv-3059, 2020 WL 4747724 (S.D. Cal. Aug. 17, 2020) ......................9

*Regscan, Inc. v. Brewer*,
  No. 04-cv-6043, 2007 WL 879420 (E.D. Pa. Mar. 16, 2007)........................10

*Riddell, Inc. v. Schutt Sports, Inc.*,
  724 F. Supp. 2d 963 (W.D. Wis. 2010) ..........................................................16

*Spence v. Board of Education of Christina School District*,
  806 F.2d 1198 (3d Cir. 1986) ...................................................................21, 22

*Syncsort Inc. v. Innovative Routines International, Inc.*,
  No. 04-cv-3623, 2008 WL 1925304 (D.N.J. Apr. 30, 2008) ......................6, 7

*Toro Co. v. Textron, Inc.*, 499 F. Supp. 241 (D. Del. 1980)...................................5

*Tri-State Energy Solutions, LLP v. KVAR Energy Savings Inc.*,
  884 F. Supp. 2d 168 (D. Del. 2012).................................................................19

*TRUSTID, Inc. v. Next Caller, Inc.*,
  No. 18-cv-172-MN, 2022 WL 318299 (D. Del. Jan. 5, 2022) ....................5, 9

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*,
  898 F.2d 914 (3d Cir. 1990) .............................................................................4

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87 (3d Cir. 2000)................4

*Zachman v. Real Time Cloud Services, LLC*,
  No. CV 9729-VCG, 2020 WL 1522840 (Del. Ch. Mar. 31, 2020)................19

## INTRODUCTION

The jury's verdict against Natera cannot stand. On the evidence CareDx adduced at trial, no reasonable jury could have found in its favor—let alone awarded CareDx $21.2 million in actual damages and $23.7 million in punitive damages. Thus, Natera respectfully renews under Rule 50(b) its Motions for Judgment as a Matter of Law ("JMOL") and moves in the alternative for a new trial under Rule 59(a) or remittitur.

CareDx did not present the evidence necessary to prevail on its claims. CareDx knew the elements it needed to prove and promised to prove them, pledging before trial it had "overwhelming" evidence of falsity and "ample" evidence of injury. (D.I. 202 at 3, 22.) That evidence never materialized.

Because CareDx proceeded to trial solely on a theory of falsity, not misleadingness, it first had to establish liability by showing that Natera's advertisements were both unambiguous and literally false. To obtain damages, CareDx needed to present evidence of actual deception and customer reliance. It also needed to quantify—with sufficient certainty—the harm it allegedly suffered. CareDx did none of these things. Instead, it avoided the central questions of liability and damages, focusing instead on secondary questions of Natera's alleged willfulness and intent.

Because of the jury's verdict, this Court must now decide an issue it flagged at the close of trial: "I'm going to let the case go to the jury, but you should be ready. I just see very, very weak claims. And I don't see the real falsity. I don't see the damages." (3/14 Tr. 3:9-13; *see also* 3/10 Tr. 380:15-381:21.). The Court should set aside the jury's verdict against Natera for two reasons, or in the alternative order a new trial or remittitur.

*First*, CareDx failed to provide the evidence of actual deception and reliance necessary to recover damages under 15 U.S.C. § 1117(a). Indeed, it ignored this bedrock requirement. It presented *no* evidence that any customer was actually deceived by or relied on Natera's statements—just vague testimony from CareDx and Natera employees. There was *no* survey evidence, *no* customer testimony, and *no* documentation to show that any physician or transplant center was deceived by the allegedly false statements, or relied on them to choose Natera's product over CareDx's. And CareDx's evidence purporting to quantify the harm it allegedly suffered was based on impermissibly speculative "lay opinion." CareDx cannot recover damages as a matter of law.

*Second*, CareDx failed to establish liability. The theory CareDx pursued required it to identify *unambiguous* statements that were *literally false*. It identified none. The allegedly "false" advertisements were, at most, ambiguous. As such, no reasonable jury could deem them "literally false." Nor did CareDx's evidence show

that the underlying Sigdel study was unreliable, or that the study failed to establish the propositions attributed to it (a so-called "establishment claim" theory). CareDx conceded[1]—and the jury necessarily agreed[2]—that the Sigdel study was *not* unreliable. The study supported and substantiated the propositions attributed to it. And the advertisements accurately described the results of the different studies. CareDx may (wrongly) believe that Natera's presentation of study results was *misleading*, but its evidence failed to show the advertisements were *literally false*— the burden CareDx had to carry. The verdict of liability should be set aside.

Alternatively, the Court should grant Natera a new trial or order remittitur. CareDx's case ignored core issues of liability and damages, relying instead on evidence supposedly showing willfulness. Willfulness, however, is legally irrelevant if Natera's statements were not literally false in the first place. And the overwhelming weight of the evidence showed that Natera's advertisements were not literally false; did not actually deceive anyone; were not relied upon by any customer; and did not cause CareDx's alleged injury. The jury nonetheless awarded CareDx *all* the revenue Natera *ever* earned from Prospera—and doubled that amount through an award of punitive damages. On this record, and given the jury's evident

---

[1] *See* 3/9 Tr. 188:22-189:9.

[2] The jury could not have concluded that Natera's T-cell mediated rejection ("TCMR") advertisement was not false (D.I. 329 at 12) without finding that the underlying Sigdel study was sufficiently reliable.

confusion, the Court should exercise its discretion to order a new trial or remittitur to a nominal sum.

## ARGUMENT

## I.   THE COURT SHOULD GRANT NATERA JMOL.

JMOL is appropriate when a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995). On a Rule 50(b) motion, "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citation omitted). Here, the Court should grant Natera JMOL because CareDx did not present evidence of actual deception and customer reliance, which precludes an award of damages, nor did it present evidence sufficient for a reasonable jury to find any of the advertisements literally false.

### A.   No Reasonable Jury Could Have Awarded Damages to CareDx.

#### 1.   CareDx Failed to Carry Its Burden to Prove Actual Deception and Reliance.

CareDx provided insufficient evidence for a reasonable jury to find "customer reliance" and actual deception—threshold requirements for Lanham Act damages. *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000); *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990)

("To recover damages, a plaintiff must show that the 'falsification actually deceives a portion of the buying public.'") (quoting *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958)). In *Toro Co. v. Textron, Inc.*, for example, the plaintiff's failure to provide "evidence that any consumer, dealer or distributor relied on the [challenged] advertisement, much less upon the particular claims … found to be false," was "fatal to [plaintiff's] damage claim." 499 F. Supp. 241, 253-54 (D. Del. 1980). In *TRUSTID, Inc. v. Next Caller, Inc.*, Judge Noreika granted a Rule 50(b) motion on Lanham Act damages for failure to show actual deception and reliance. No. 18-cv-172-MN, 2022 WL 318299, at *8-9 (D. Del. Jan. 5, 2022). And here, because causation and injury are necessary elements of CareDx's state-law claims, *infra* 18-20, failure to establish actual deception and reliance precludes recovery on those claims, too.

CareDx therefore needed to present evidence that Natera's allegedly false advertisements *actually deceived some portion of the purchasing public*. And CareDx needed to present evidence that customers *actually relied* upon Natera's allegedly false advertisements in deciding to use Prospera over AlloSure—as opposed to making that decision based on the underlying studies or differences between the products. (*See* 3/14 Tr. 172:12-25.) Yet CareDx did not present such evidence. It proffered no customer survey, nor did it call a single physician or transplant center employee who could testify to being deceived by Natera's

5

statements. It presented no documents evincing actual deception. Instead, CareDx attempted to prove reliance and actual deception with (1) internal documents and vague employee testimony about Natera's marketing efforts and (2) unsubstantiated statements from one CareDx witness about transplant centers at which he suspected Natera *may* have taken sales from CareDx. That is not enough.

*First*, CareDx emphasized that Natera had a goal of converting AlloSure users to Prospera users, and that Natera marketing director Shephalie Lahri believed she "enabled" her sales team to succeed using Natera's marketing plan as a whole:

> **Q.** And has Natera been successful at converting AlloSure users to Prospera users?
> **A.** Yeah, can you define "successful"?
> **Q.** Well, what would you consider success?
> **A.** I'd consider success, as a marketing person, that I've enabled the team, the sales team, with the right tools to convert at least one AlloSure users—user to use Prospera.
> **Q.** And by that measure of success, were you successful?
> **A.** Yes.

(3/8 Tr. 287:16-25.) A snippet of this testimony was the *only* "reliance" evidence CareDx ever identified. (3/14 Tr. 89:13-22, 147:7-12.) But the fact that a marketing director believed she provided her sales team with tools for success does not establish that any customer relied on any statement CareDx alleged to be false. *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, No. 04-cv-3623, 2008 WL 1925304, at *11 n.10 (D.N.J. Apr. 30, 2008) ("The fact that customers may have chosen IRI instead of Syncsort … during the time that IRI engaged in this allegedly false

advertising does not establish that the harm to Syncsort stemmed from that advertising….").

*Larry Pitt & Associates v. Lundy Law LLP* presented a similar failure of proof on stronger evidence than CareDx offers here. 294 F. Supp. 3d 329 (E.D. Pa. 2018). Unlike CareDx, the plaintiff in *Lundy* could at least point to "evidence that potential clients responded to [the defendant's] advertisements." *Id.* at 341. But the court in *Lundy* held this "d[id] not support [the] conclusion that the clients relied on any of the specific false misrepresentations," because "evidence that clients were responding specifically to advertisements" did "not establish that [defendant's] clients were influenced by any specific misrepresentations" contained in those advertisements. *Id.* The plaintiff, like CareDx, "provided no surveys or consumer testimony … that show clients would have responded differently to [defendant's] advertisements" without the alleged misrepresentations. *Id.* The court granted summary judgment. *Id.* JMOL is warranted here for the same reasons.

*Second*, CareDx's evidence purporting to identify lost sales—*ipse dixit* testimony from the former CEO—failed to establish a nexus between the advertisements and any customer decision that harmed CareDx. Peter Maag testified that some transplant centers began using Prospera after Natera began marketing.[3]

_____

[3] Maag was not precise on whether Natera's marketing caused CareDx any lost sales. He named "UCLA, Toledo, [and] Wake Forest." (3/7 Tr. 220:25.) But he did not elaborate, save clarifying that transplant centers like UCLA "are not ceasing … the

(3/7 Tr. 220:10-221:2.) Yet Maag's testimony says nothing about *why* the centers made their purchasing decisions. It fails to establish reliance on *any* marketing materials, let alone the allegedly false statements at issue. This evidentiary deficiency is fatal. *Alpha Pro Tech, Inc. v. VWR Int'l, LLC*, No. 12-cv-1615, 2017 WL 3671264, at *15 (E.D. Pa. Aug. 23, 2017) ("[Plaintiff] has not pointed to any non-hearsay customer testimony on the record that the allegedly false statements misled customers or influenced their purchasing decisions, and it rejects the need for a survey. … [B]are statements pertaining to a handful of customers … cannot establish a crucial legal element."); *see also Citrix Sys., Inc. v. Workspot, Inc.*, No. 18-cv-588-LPS, 2019 WL 3858602, at *5 (D. Del. Aug. 16, 2019) (no injury where plaintiffs "fail[ed] to show that [the] allegedly false advertisements (as opposed to, for example, better prices or better non-patented technology) likely caused [] customers to switch" products).

Customers could have chosen Prospera for any number of reasons—including the underlying studies, or product differentiators like Prospera's ability to detect TCMR and subclinical rejection. There was *no* reasonable basis to infer that customers made such a clinically consequential decision in reliance on statements in these particular marketing materials. Transplant physicians are sophisticated

---

use of our tests," just "also using Prospera," (*id.* 245:12-16) and that "[W]ake Forest [and] Toledo" were only "*considering* switching … away from CareDx." (*Id.* 291:2-4 (emphasis added)).

customers who do not make decisions that way. As Dr. Gauthier explained, advertisements are, at most, "a factor that entices [physicians] to read the articles." (3/9 Tr. 19:22-24.) "[W]e're not talking laundry detergent here," he continued; "they're going to do the research independently of the marketing material before they make a decision regarding how to care for their patients." (*Id.* 20:22-21:8) Natera aided that effort by providing doctors with citations to—and copies of—the underlying research.

CareDx's failure of proof necessarily means no reasonable jury could have found the elements of causation and injury. *TRUSTID*, 2022 WL 318299, at *9 (plaintiffs must "prove a causal link between the deceptive statement and harm suffered"; failure to show reliance necessarily "frustrates [the] ability to prove that deception based on that statement caused injury").

### 2. CareDx's Failure to Prove Actual Deception and Reliance Precludes Corrective Advertising Damages.

In the Third Circuit, plaintiffs must provide evidence of actual deception and reliance to recover *any damages* under 15 U.S.C. § 1117(a). Hence, to the extent that part or all of the jury's actual-damages award here was for corrective advertising, CareDx's failure of proof precludes recovery. *Cf. Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-cv-3059, 2020 WL 4747724, at *8 (S.D. Cal. Aug. 17, 2020) ("[T]here must be some evidence that the allegedly false advertising likely caused an injury making this corrective advertising necessary.").

9

Indeed, the only evidence CareDx provided on this score was Maag's baseless "lay opinion" testimony, which could not meet CareDx's burden to show damages with reasonable certainty. Natera objected to this evidence as legally insufficient (D.I. 297-14 at 16-19; D.I. 309), and the testimony CareDx elicited at trial confirmed it should not have gone before the jury. (*See* 3/7 Tr. 237:22-238:4, 273:1-18 (Court's comments).) Maag claimed a $45 to $60 million estimate based on planning calls, team meetings, and spreadsheets not produced in discovery. (*Id.* 239:2-15, 264:19-265:4) The components of that massive number were hazy ("four to five" brochures), suspiciously round ($1 million per brochure; $1000 per day per salesperson), or reverse-engineered to reach the topline result (salespeople spent "60 to 70 percent of their time" on corrective measures). (*Id.* 226:24-227:9, 233:6-234:16.) Guesswork like this is not reliable enough to support a damages award. *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201 (3d Cir. 1995) (lay opinion must be "reasonably reliable"); *Regscan, Inc. v. Brewer*, No. 04-cv-6043, 2007 WL 879420, at *8 (E.D. Pa. Mar. 16, 2007) (rejecting damages theory "based solely on the unfounded speculation of an interested witness"); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1310 (Fed. Cir. 2009) (damages cannot be based on "speculation or guesswork").

### 3.   CareDx Is Not Entitled to Punitive Damages.

CareDx's failure to prove actual deception and reliance also precludes punitive damages, which must be predicated on a finding of causation and injury. Indeed, punitive damages may be awarded only upon proof that "false advertising *caused the other party harm* under Delaware common law for unfair competition," and then only if the jury properly "award[ed] compensatory damages." (3/14 Tr. 174:10-14 (emphasis added).) And punitive damages are not available under the Lanham Act. *See* 15 U.S.C. § 1117(a). JMOL is therefore warranted on both actual and punitive damages.

### B.   No Reasonable Jury Could Have Found Liability.

### 1.   CareDx Failed to Adduce Sufficient Evidence of Literal Falsity.

CareDx pledged to prove "literal falsity," stipulating that it did not contend that Natera's marketing materials were misleading. (D.I. 301-1 at 113.) The statements CareDx alleged to be false were in nearly every case drawn—sometimes verbatim—from peer-reviewed scientific studies whose falsity is not at issue.

Here, no reasonable jury could have found what CareDx had to prove—that Natera's advertisements contained statements that were (1) unambiguous and (2) "literally false." *See Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014). Literal falsity is necessarily a contextual inquiry that considers the sophistication of the audience. *See, e.g., Plough, Inc. v. Johnson &*

*Johnson Baby Prod. Co.*, 532 F. Supp. 714, 717 (D. Del. 1982). Context here also includes underlying peer-reviewed research that Natera footnoted throughout its marketing materials and provided to prospective customers. Undisputed evidence established that Natera representatives always supplied copies of the Sigdel paper to customers along with promotional brochures, and Natera representatives would discuss the underlying research with customers. (*See* 3/8 Tr. 307:10-16; 3/9 Tr. 60:19-61:14.) Against this backdrop, and in light of the evidence presented at trial, no reasonable jury could find falsity.

### a.   The Challenged Statements Are Ambiguous.

As a matter of law, "[u]nless [a] claim is unambiguous … it cannot be literally false." *Groupe SEB*, 774 F.3d at 198. Thus, unlike a plaintiff pursuing a misleadingness theory, a plaintiff seeking to prove literal falsity must first identify a particular statement that is *unambiguous*. *Id.* This is an "important limiting principle … which reserves for this category only the bald-faced, egregious, undeniable, over the top falsities." *Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp. 3d 405, 415 (E.D. Pa. 2016) (quotation marks omitted), *aff'd*, 863 F.3d 220 (3d Cir. 2017). No reasonable jury could find that the advertisements meet this standard.

*First*, as to the "unparalleled precision" statement in the promotional brochure (D.I. 329 at 11), CareDx's own expert testified that the term "precision" is ambiguous—as used in the brochure, it "includ[es] multiple different things."

(3/9 Tr. 151:13-24.) Where a party "admits that [an advertisement's] terms are 'subjective and require the customer's input,'" the claim cannot be unambiguously false. *Citrix*, 2019 WL 3858602, at *4. There was no basis for the jury to conclude that "unparalleled precision" referred unambiguously to any one factual proposition. To the extent it unambiguously refers to anything, undisputed evidence established that Prospera *is* more analytically "precise." (3/10 Tr. 62:7-23.)

*Second*, Natera made no unambiguous "claims" of performance in pediatric populations. (D.I. 329 at 13.) The advertisement at issue—a slide titled "Highly sensitive across a range of rejection types and patients"—on its face does *not* assert pediatric performance. It merely states, accurately, that 45 patients under 18 were in the Sigdel study. (*See, e.g.*, 3/10 Tr. 70:22-72:9.) CareDx's case for "falsity" is based on an *assumption* that customers *necessarily* inferred from the title and the demographic data an implicit assertion of Prospera's performance in *every* subgroup. But CareDx pointed to no other marketing material claiming (or even suggesting) Prospera's performance in pediatric populations; Sigdel itself demonstrates Natera was *not* making that claim. This supposed false "statement" "relies upon the viewer or consumer to integrate its components"—a hallmark of ambiguity. *Groupe SEB*, 774 F.3d at 198-99 (quotation marks omitted). It cannot be literally false.

*Third*, advertisements stating that Prospera is "more sensitive and specific" (D.I. 329 at 4) were ambiguous. CareDx urged the jury to parse this proposition into

13

*two* claims—that Prospera was "more sensitive" and also "more specific." (*See, e.g.*, 3/9 Tr. 173:6-15, 174:2-5; 3/14 Tr. 52:16-21.) As the evidence showed, however, this claim could also reasonably refer to (and was intended to refer to) the combination of both sensitivity and specificity known as "AUC." (*E.g.*, 3/8 Tr. 250:1-24; 3/9 Tr. 133:5-8.). A statement with two reasonable interpretations is ambiguous on its face.

*Fourth*, none of the challenged statements can be deemed literally false based on the presence or absence of statistical significance. CareDx repeatedly insisted that the challenged AlloSure/Prospera comparisons were not based on statistically significant differences. (*E.g.*, 3/9 Tr. 135:3-139:23, 145:2-15, 146:22-147:1; 156:22-157:3, 158:3-12.) But it is undisputed that the advertisements did not *assert* statistically significant differences (*see* 3/9 Tr. 170:18-171:20; 3/10 Tr. 97:3-8); they merely described the results of the underlying studies. To the extent CareDx argued (and the jury concluded) that any advertisement was "false" because it implicitly asserted statistically significant differences, the evidence failed to establish that any figure or comparison *unambiguously* (let alone *necessarily*) conveyed this. Moreover, undisputed evidence showed that statistical significance does not have a single definition; there are different levels at which something can be "significant," identified by different "p-values." (*E.g.*, 3/9 Tr. 139:7-23; 3/10 Tr. 57:14-59:1.) No reasonable jury could have found that Natera's advertisements, which provided no

14

p-values, *unambiguously* conveyed that any reported result or comparison was statistically significant at any specific level.

In any event, by this measure, Natera's sensitivity claims (in D.I. 329 at 5-7) are not false. Undisputed testimony established that those comparisons are *necessarily* statistically significant because the Sigdel and Bloom confidence intervals do not overlap, meaning the difference between them cannot be attributable to chance. (3/10 Tr. 92:14-19.) JMOL is warranted on Question No. 2 on this ground alone.

> **b.      There Was Insufficient Evidence to Support an "Establishment Claim" Theory of Liability.**

Even assuming the statements were unambiguous, CareDx failed to show falsity. Its case principally targeted the supposed shortcomings of the underlying Sigdel study—an "establishment claim" theory—which, if proven, could render the accurate statements literally false. To prevail, CareDx's evidence had to prove that Sigdel (1) was an unreliable study or (2) failed to establish the propositions for which it was cited. (*See* 3/14 Tr. 166:15-22.) The evidence proved neither.

To begin with, CareDx apparently recognized it could not prove the Sigdel study was unreliable. Although CareDx told the Court its argument was based on the unreliability of the "underlying studies" (3/14 Tr. 11:6-8), CareDx repeatedly told the jury something different—that the *comparison* between study results was "not sufficiently reliable" and therefore literally false. (*See, e.g.*, 3/14 Tr. 51:22-52:2

("[T]hat the comparison is not sufficiently reliable, that's literal falsity."), 58:21-23, 78:13-16, 145:16-18.)

As the jury was instructed, however, an advertisement is literally false if "*the studies or data* were not sufficiently reliable to permit a conclusion that the claim is true." (3/14 Tr. 166:15-22 (emphasis added).) The question is whether the underlying research was so flawed that a study's reported conclusions cannot be credited at all. By contrast, an advertisement or press release merely comparing two numbers is not a "study or data," and as such, the law does not deem a *comparison* "literally false" on grounds it is not "reliable." At most, it could be *misleading*. *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 455-56 (D. Conn. 1994) ("because the conclusions reported in both the 'Lewis study' and the 'Adalat CC Product Monograph' are not literally false, and are based upon reliable tests, the issue becomes whether a cross-study comparison of the two tests" is *misleading*—not literally false).

CareDx sought to show that Natera's comparisons between studies were not "apples to apples" and urged a finding of falsity based on an (ad hoc) "insufficiently reliable *comparison*" standard. Again, though, comparing accurately reported and footnoted study results cannot be "*false*." At most, it could be *misleading*. *Cf. Riddell, Inc. v. Schutt Sports, Inc.*, 724 F. Supp. 2d 963, 980 (W.D. Wis. 2010) (granting summary judgment on "establishment claim" theory where plaintiff "tried

to take the easiest evidentiary path to success: literal falsity," but "at most, the challenged advertisements were misleading or deceptive"). CareDx, however, disclaimed a theory of misleadingness, the jury was not instructed on it, and at any rate, CareDx did not submit evidence to allow the jury to conclude that even a single customer *found* the comparisons misleading (let alone false).

As for the theory of literal falsity that CareDx ostensibly sought to prove—that the Sigdel study was insufficiently reliable or otherwise failed to support the advertisements—no reasonable jury could have found for CareDx.

*First*, no reasonable jury could have concluded that the Sigdel study or its statistics were unreliable *per se*. Even CareDx's expert acknowledged the Sigdel study was reliable. (3/9 Tr. 188:22-189:9.) As noted, CareDx argued that the "comparison" was unreliable—not the study. And the jury *necessarily* concluded that Sigdel was sufficiently reliable, because it found Natera's TCMR advertisement (which relies on the Sigdel and Bloom papers) was not false. (D.I. 329 at 12.) If the jury had rejected Sigdel (or any comparison of results between studies) as inherently unreliable, then it could not have found for Natera on Question No. 9.

*Second*, given Sigdel's undisputed reliability, the only possible path to a verdict favoring CareDx is by finding that the studies or data "[did] not establish the claim asserted." (3/14 Tr. 166:15-22.) But the record shows the studies *do* establish the claims asserted—indeed, Sigdel contains some of those comparisons verbatim.

17

All of the challenged statements attributed by CareDx to Natera, including the presentation of test performance, were factually accurate. They were drawn from and cited to the supporting scientific literature, which was undisputedly reliable. None of the advertisements stated anything about the results beyond the literally true text on the page. (*See* 3/9 Tr. 170:24-171:9.) Indeed, Question No. 4 concerned an assertion that "[i]n its recently published clinical validation study, Natera *reported*" certain results—which is indisputably true. (D.I. 329 at 7 (emphasis added).)

Neither the advertisements nor the trial record support a finding of *literal falsity* based on accurate statements of Sigdel's results and how they compared to other studies' results. *Supra* 15-17. CareDx did not prove its establishment-claim case.

### 2.   CareDx   Failed   to   Establish   Common-Law   Unfair Competition.

Natera renews its motion for JMOL on CareDx's unfair competition claim. To prevail on such a claim, a plaintiff must establish "a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Agilent Techs., Inc. v. Kirkland*, No. CIV.A. 3512-VCS, 2009 WL 119865, at *5 (Del. Ch. Jan. 20, 2009) (quotation marks omitted).

CareDx adduced no evidence of a "reasonable expectancy" of "entering" any business relationship. Indeed, it was a cornerstone of CareDx's case that Natera

targeted *existing* AlloSure customers. (*E.g.*, 3/8 Tr. 64:23-65:2; 3/9 Tr. 16:22-17:3.) CareDx's meager "evidence" of lost sales concerned a handful of *ongoing* relationships with transplant centers. (*E.g.*, 3/7 Tr. 220:22-221:5, 290:15-291:4.) There was no evidence of "any particular valid business relationship," *prospective* in nature, allegedly frustrated. *FMC Corp. v. Summit Agro USA, LLC*, No. 14-cv-51-LPS, 2014 WL 6627727, at *14 (D. Del. Nov. 14, 2014) (quotation marks omitted); *cf. Zachman v. Real Time Cloud Servs., LLC*, No. CV 9729-VCG, 2020 WL 1522840, at *19 (Del. Ch. Mar. 31, 2020) ("[T]he Intervenor-Defendant has not pled unfair competition, only interference with its contractual relationship with [existing] customers.").

CareDx's evidence also failed to establish wrongful interference, causation, or injury. Natera's literally true advertising was not "wrongful," *supra* 11-18, and CareDx did not provide sufficient evidence of "interference." Rather, CareDx provided vague testimony that it *may* have lost some sales to Natera at some centers *already* using AlloSure. *Supra* 6-9. There was also no evidence showing any of Natera's conduct "*cause[d]* [CareDx] harm." *Agilent Techs.*, 2009 WL 119865, at *5 (emphasis added); *see also Tri-State Energy Sols., LLP v. KVAR Energy Sav. Inc.*, 884 F. Supp. 2d 168, 183 (D. Del. 2012); *supra* 9.

### 3. CareDx Failed to Establish a DTPA Violation.

Natera also renews its JMOL motion as to CareDx's DTPA claim. CareDx was required to "show *injury* to a 'business or trade interest' that is *caused* by the defendant's 'interference by unfair or deceptive trade practices.'" *Emerson Elec. Co. v. Emerson Quiet Kool Co.*, No. 17-cv-846-LPS, 2019 WL 1397244, at *4 (D. Del. Mar. 28, 2019) (emphasis added). CareDx's failure to show literal falsity of any challenged statement means no reasonable jury could have found liability on the DTPA claim. *See, e.g.*, *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 653 (D. Del. 2006) (DTPA claim "fail[ed] for the same reasons as the Lanham Act claim fails"). For the same reasons CareDx failed to provide sufficient evidence of actual deception or reliance, no reasonable jury could find any advertisements *caused* any injuries alleged. *See Emerson Elec.*, 2019 WL 1397244, at *4; *supra* 6-9.

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT NATERA A NEW TRIAL OR REMITTITUR.

Natera moves in the alternative for a new trial pursuant to Rule 59(a) or for remittitur. "A district court has the discretion to order a new trial when the verdict is contrary to the evidence, a miscarriage of justice would result if the jury's verdict were left to stand, or the court believes the verdict resulted from confusion." *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, No. 16-cv-41-CFC, 2020 WL 3060743, at *2 (D. Del. June 9, 2020).

The verdict is contrary to the evidence. The overwhelming weight of evidence showed Natera's advertisements were literally true, and, in any event, there is no evidence any customer made a purchasing decision in reliance on the claims at issue. The jury nonetheless awarded windfall damages. Moreover, CareDx put on an inherently confusing case. It repeatedly presented the same emails, even though they were minimally probative of the core liability issues. It provided unsupported corrective-advertising damages testimony, which set a damages high-water mark of $60 million. It conflated "head-to-head studies" and "head-to-head comparisons." And it sought to blur the lines between misleadingness and literal falsity. *Cf. Lampkins v. Mitra QSR KNE, LLC*, 383 F. Supp. 3d 315, 335 (D. Del. 2019) (ordering new trial where "jury was confused by the various and conflated theories of liability presented both explicitly and implicitly by [plaintiff] at trial"). On this record, it would be a miscarriage of justice to permit the verdict and $45 million award to stand. At a minimum, a new trial is warranted.

Natera also is entitled to remittitur, "a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Cortez v. TransUnion, LLC*, 617 F.3d 688, 715 (3d Cir. 2010). This is a discretionary determination, because "[t]he district judge is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally

based conclusion." *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986).

Remittitur is justified here. The jury's $45 million award was grossly disproportionate, given CareDx's paucity of proof of reliance. The only such evidence CareDx cited was Ms. Lahri's vague testimony. It identified only three customers in connection with lost sales, and even then failed to quantify those alleged lost sales or link them to any statement alleged to be false. Ultimately, CareDx could not prove *any* damages were needed to make it whole, and the award (both compensatory and punitive) should be reduced to a nominal sum.

## CONCLUSION

The Court should grant JMOL pursuant to Rule 50(b) against CareDx on CareDx's Lanham Act, unfair competition, and DTPA claims, or, in the alternative, grant a new trial pursuant to Rule 59(a), or order remittitur.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*

_____

OF COUNSEL:

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

Kristin J. Achterhof
Julia L. Mazur
Martin S. Masar III, Ph.D.
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL  60661
(312) 902-5200

Christina L. Costley
Paul S. Yong
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA  90067
(310) 788-4400

*Attorneys for Defendant Natera, Inc.*

Bruce G. Vanyo
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022
(212) 940-8800

Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
2900 K Street NW, Suite 200
Washington, DC  20007
(202) 625-3500

April 4, 2022

## <u>CERTIFICATE OF COMPLIANCE</u>

This Opening Brief complies with the type-volume limitations specified in Local Rule 7.1.3 and the Court's November 6, 2019 Standing Order Regarding Briefing in All Cases. According to the word processing system used to prepare this document, the brief contains 4,996 words. This total excludes the cover page, tables, signature block, certification, and certificate of service.

I further certify that this brief complies with the typeface requirements set forth in the Court's November 6, 2019 Standing Order Regarding Briefing in All Cases because this brief was prepared using Microsoft Word in 14-point Times New Roman font.

/s/ Derek J. Fahnestock
_____
Derek J. Fahnestock (#4705)

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2022 I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 4, 2022, upon the following in the manner indicated:

Brian E. Farnan, Esquire                      *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Edward R. Reines, Esquire                     *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
*Attorneys for Plaintiff*

Randi W. Singer, Esquire                      *VIA ELECTRONIC MAIL*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
*Attorneys for Plaintiff*


*/s/ Derek J. Fahnestock*
_____
Derek J. Fahnestock (#4705)