IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CAREDX, INC.,                        )
                                     )
            Plaintiff,               )
                                     )
      v.                             )   C.A. No. 19-662 (CFC) (CJB)
                                     )
NATERA, INC.,                        )
                                     )
            Defendant.               )

**NATERA'S OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR EQUITABLE RELIEF**

OF COUNSEL:

Kristin J. Achterhof
Julia L. Mazur
Martin S. Masar III, Ph.D.
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661

Christina L. Costley
Paul S. Yong
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067

Bruce G. Vanyo
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022

Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
2900 K St. NW, Suite 200
Washington, DC 20007

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendant Natera, Inc.*

May 6, 2022

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ...........................................................................................................1

Argument...............................................................................................................1

I.      Natera Is Entitled to a Permanent Injunction ..............................................2

      A.      The Jury's Finding of Liability Entitles Natera to a Presumption of
            Irreparable Harm, and Monetary Damages Are Inadequate. ................2

      B.      The Remaining Factors Governing Injunctive Relief Favor Natera.....4

II.     Natera Seeks Reasonable Injunctive Relief Tailored to the Proven
      Violation. .....................................................................................................5

Conclusion .............................................................................................................7

Certificate of Compliance .....................................................................................8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFAB Industrial Services, Inc. v. Pac-West Distributing NV LLC*,
   No. 19-cv-0566, 2022 WL 717076 (E.D. Pa. Mar. 10, 2022)...........................3

*Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 689 (D.N.J. 2015) .............................5

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ....................................2

*Hayward Industries, Inc. v. Saltwater Pool Supplies*,
   No. 20-cv-6105, 2021 WL 1940711 (D.N.J. May 14, 2021) ...........................2

*Innovation Ventures, LLC v. Body Dynamics, Inc.*,
   No. 08-cv-12711, 2009 WL 877640 (E.D. Mich. Mar. 30, 2009) ....................4

*Kennedy Industries, Inc. v. Aparo*,
   416 F.Supp.2d 311 (E.D. Pa. 2005)..................................................................5

*Newborn Bros. Co. v. Albion Engineering Co.*,
   481 F.Supp.3d 312 (D.N.J. 2020)....................................................................6

**Statutes**

15 U.S.C. § 1116(a) ....................................................................................1, 3, 6

**Other Authorities**

5 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION
   § 30:1 (5th ed. Mar. 2022 rev.).......................................................................2

ii

## INTRODUCTION

The jury correctly found that CareDx engaged in false advertising by claiming that it had "no involvement" in a study known as the Melancon paper (alternatively, the Melancon study). (D.I. 329 at 21-22.) The jury heard overwhelming evidence that: (1) CareDx initiated the study; (2) CareDx provided the drafting, the statistical analysis, and the funding for the study, and (3) CareDx admitted internally that the study was to be used as a "marketing combat tool." This evidence rendered CareDx's "no involvement" claim literally false—a finding CareDx has not contested.

Consistent with the verdict, and pursuant to 15 U.S.C. § 1116(a), Natera now moves the Court for an order permanently enjoining CareDx from making claims of non-involvement and non-funding about the Melancon paper, and requiring CareDx to issue a corrective press release detailing its involvement in and sponsorship of the Melancon study.[1]

## ARGUMENT

The Lanham Act authorizes courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," to prevent and remedy unlawful false advertising. 15 U.S.C. § 1116(a). Indeed, the

---

[1] CareDx proposed that Natera agree to a bilateral stipulated injunction. The terms of that injunction were, however, unacceptably vague and lacked the specificity and detail required by Fed. R. Civ. P. 65. Natera advised CareDx that it could not agree to it.

"usual and normal remedy" in a Lanham Act case is an injunction, and "[t]he usual historical practice has been that a prevailing plaintiff in a case of…false advertising will ordinarily receive permanent injunctive relief of some kind." 5 J. THOMAS MCCARTHY, TRADEMARKS & UNFAIR COMPETITION § 30:1 (5th ed. Mar. 2022 rev.).

## I.     NATERA IS ENTITLED TO A PERMANENT INJUNCTION.

In assessing the propriety of a Lanham Act injunction, "[t]he court's discretion is guided by the four traditional equitable factors: (1) irreparable injury; (2) inadequacy of legal remedies; (3) the balance of hardships as between the plaintiff and defendant; and (4) the public interest." *Hayward Indus., Inc. v. Saltwater Pool Supplies*, No. 20-cv-6105, 2021 WL 1940711, at \*14 (D.N.J. May 14, 2021); *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (listing factors). Natera satisfies all four.

### A.     The Jury's Finding of Liability Entitles Natera to a Presumption of Irreparable Harm, and Monetary Damages Are Inadequate.

In holding CareDx liable for false advertising under the Lanham Act, the jury necessarily found that CareDx's advertising claims pertaining to the Melancon paper were (i) literally false; (ii) material; and—most relevant here—(iii) likely to injure Natera in terms of declining sales, loss of good will, or otherwise. (3/14 Tr. 1454:23-1455:8; D.I. 329 at 21-22.) The Lanham Act provides that a "plaintiff seeking [an] injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a

permanent injunction." 15 U.S.C. § 1116(a); *see, e.g.*, *AFAB Indus. Serv., Inc. v. Pac-W. Distrib. NV LLC*, No. 19-cv-0566, 2022 WL 717076, at *5 (E.D. Pa. Mar. 10, 2022) (recognizing presumption). The jury found that CareDx violated the Lanham Act in connection with the false statements made in the June 19, 2020 Melancon paper and the June 22, 2020 CareDx press release, thereby entitling Natera to the statutory presumption of irreparable harm.

Nor is that presumption rebutted here, for the same reasons that monetary damages (had Natera sought them) would not be appropriate to remedy the ongoing marketplace harm from CareDx's false disclaimers. The evidence established that CareDx sponsored and helped draft the Melancon paper specifically to counter the Sigdel study—it was intended as a "marketing combat tool" and was "not great science." (DTX-015.) CareDx clearly regarded the study as crucial to its marketing efforts; it paid Dr. Melancon about $50,000 for his work. (DTX-084; 3/9 271:7-12, 271:16-272:12.) CareDx, in other words, conceived and disseminated a marketing tool in the guise of a scientific study, while falsely claiming it was not involved.

The harm from false advertising of this kind is particularly pernicious and difficult to measure because it taints the body of information physicians actually rely upon when they make purchasing decisions. As Dr. Gauthier testified, marketing materials may pique prospective customers' interest, but physicians will look to the *underlying research* in making their purchasing decisions: they will "do the research

independently of the marketing material," and their "view of the articles" may lead to increased sales. (3/9 20:21-21:25.) The jury's finding that CareDx's false statements are likely to injure Natera reflects its recognition of an intuitive reality: Misrepresenting involvement in and sponsorship of a study designed to cast doubt on Prospera's comparative efficacy saps Natera's goodwill and threatens to diminish sales of Prospera by passing off a "marketing combat tool" as impartial scholarship.

**B.    The Remaining Factors Governing Injunctive Relief Favor Natera.**

The two remaining factors governing injunctive relief—the balance of hardships and the public interest—strongly favor Natera. CareDx will suffer no appreciable hardship from removing the press release and paper containing its false claims from its own website, and requesting that the Melancon paper be taken down from the *Kidney360* website and any other known database or website where those documents are hosted; refraining from making such claims in the future; and issuing a corrective press release detailing its involvement in and sponsorship of the Melancon study. *Cf. Innovation Ventures, LLC v. Body Dynamics, Inc.*, No. 08-cv-12711, 2009 WL 877640, at *4 (E.D. Mich. Mar. 30, 2009) ("[E]njoining any further distribution of the misleading press release and requiring issuance of a corrective notice will not cause substantial harm to [defendant] or others, and serves the public interest in preventing deceptive practices in the marketplace."). By contrast, if these corrective actions are not taken, Natera must contend with the continuing circulation

of false claims about the independence of the Melancon study, which are likely to continue to deceive potential customers choosing between AlloSure and Prospera. *Cf., e.g.*, *Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 689 (D.N.J. 2015) (granting permanent injunction where proposed relief "only requires Defendant to abide by the law and to refrain from infringing [trademarks]," while without one plaintiff "faces the hardships that gave rise to this litigation").

There is also a strong public interest in issuing a permanent injunction. The evidence showed—and the jury agreed—that CareDx was *deeply* involved in the Melancon study. It is unquestionably in the public interest to prevent literally false statements from tainting the marketplace. *See, e.g.*, *Kennedy Indus., Inc. v. Aparo*, 416 F.Supp.2d 311, 317 (E.D. Pa. 2005). And here, there is an added imperative: ensuring transparency about the involvement of diagnostic testing companies in studies concerning the performance of their tests, and deterring literally *false* statements that such studies are "independent."

## II.    NATERA SEEKS REASONABLE INJUNCTIVE RELIEF TAILORED TO THE PROVEN VIOLATION.

Natera is accordingly entitled to the injunctive sought by its Motion. The specific relief sought by Natera's Motion, and set forth below, is narrowly targeted at halting the circulation of the study and press release and remedying the ongoing harm caused by CareDx's literally false statements.

*First*, CareDx should be ordered to (i) promptly remove the June 22, 2020 press release from its website, and request the removal of the press release from any other websites or databases on which the press release is available and (ii) take reasonable efforts to request the removal, as early as practicable, of the June 19, 2020 paper containing its false disclaimers from *Kidney360* and any website or database on which the article is available.

*Second*, CareDx should be enjoined from representing, in any subsequent press releases, scientific articles, or any other form of marketing material, that (i) CareDx had no involvement with the Melancon study or (ii) CareDx did not provide funding for the Melancon study.

*Third*, CareDx should be ordered to promptly issue a corrective press release (i) retracting its prior press release and (ii) detailing its involvement in and sponsorship of the Melancon study. *See Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F.Supp.3d 312, 360 (D.N.J. 2020) (approving injunction requiring "corrective action in the form of . . . a press release").

*Fourth*, CareDx should be ordered to file a sworn certification with the Court within thirty days from entry of judgment attesting to its compliance with the terms of the injunction. *See* 15 U.S.C. § 1116(a) (injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty

days…a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction").

## CONCLUSION

The Court should enter the requested permanent injunction.

OF COUNSEL:

Kristin J. Achterhof
Julia L. Mazur
Martin S. Masar III, Ph.D.
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL  60661
(312) 902-5200

Christina L. Costley
Paul S. Yong
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA  90067
(310) 788-4400

Bruce G. Vanyo
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022
(212) 940-8800

Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
2900 K Street NW, Suite 200
Washington, DC  20007
(202) 625-3500

May 6, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

This Opening Brief complies with the type-volume limitations specified in Local Rule 7.1.3 and the Court's Standing Order Regarding Briefing in All Cases. According to the word processing system used to prepare this document, the brief contains 1,443 words. This total excludes the cover page, tables, signature block, certification, and certificate of service.

I further certify that this brief complies with the typeface requirements set forth in the Court's Standing Order Regarding Briefing in All Cases because this brief was prepared using Microsoft Word in 14-point Times New Roman font.

*/s/ Derek J. Fahnestock*
_____
Derek J. Fahnestock (#4705)

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 6, 2022, upon the following in the manner indicated:

Brian E. Farnan, Esquire                         *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Edward R. Reines, Esquire                        *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
*Attorneys for Plaintiff*

Randi W. Singer, Esquire                         *VIA ELECTRONIC MAIL*
Elizabeth McLean, Esquire
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
*Attorneys for Plaintiff*

*/s/ Derek J. Fahnestock*
_____
Derek J. Fahnestock (#4705)