IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAREDX, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-662 (CFC) |
| | ) |
| NATERA, INC., | ) |
| | ) |
| Defendant. | ) |

**<u>DEFENDANT NATERA, INC.'S NOTICE OF SUBSEQUENT AUTHORITY</u>**

Pursuant to D. Del. LR 7.1.2(b), Defendant Natera, Inc. respectfully notifies the Court of the March 1, 2023, opinion by the Federal Circuit in *TRUSTID, Inc. v. Next Caller, Inc.*, C.A. No. 22-1433 (Fed. Cir), D.I. 35 at 5-11 (opinion attached) as subsequent authority relevant to Natera's Motion for Judgment as a Matter of Law, New Trial, or Remittitur (D.I. 339). The opinion affirmed Judge Noreika's grant of Judgment as Matter of Law of no false advertising and is relevant to Natera's arguments regarding the reliance element of false advertising under the Lanham Act (D.I. 340 at 4-10; D.I. 354 at 1-7).

.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Kristin J. Achterhof<br>Julia L. Mazur<br>Martin S. Masar III, Ph.D.<br>KATTEN MUCHIN ROSENMAN LLP<br>525 West Monroe Street<br>Chicago, IL  60661<br>(312) 902-5200<br><br>Christina L. Costley<br>Paul S. Yong<br>KATTEN MUCHIN ROSENMAN LLP<br>2029 Century Park East, Suite 2600<br>Los Angeles, CA  90067<br>(310) 788-4400<br><br>Bruce G. Vanyo<br>Thomas Artaki<br>KATTEN MUCHIN ROSENMAN LLP<br>575 Madison Avenue<br>New York, NY  10022<br>(212) 940-8800<br><br>Timothy H. Gray<br>KATTEN MUCHIN ROSENMAN LLP<br>2900 K Street NW, Suite 200<br>Washington, DC  20007<br>(202) 625-3500<br><br>March 3, 2023 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Derek J. Fahnestock*<br><br>Jack B. Blumenfeld (#1014)<br>Derek J. Fahnestock (#4705)<br>Anthony D. Raucci (#5948)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>dfahnestock@morrisnichols.com<br>araucci@morrisnichols.com<br><br>*Attorneys for Defendant* |

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**TRUSTID, INC.,**
*Plaintiff-Appellant*

v.

**NEXT CALLER, INC.,**
*Defendant-Appellee*
_____

2022-1433
_____

Appeal from the United States District Court for the District of Delaware in No. 1:18-cv-00172-MN, Judge Maryellen Noreika.
_____

Decided:  March 1, 2023
_____

WILLIAM MILLIKEN, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for plaintiff-appellant. Also represented by MICHAEL D. SPECHT, JONATHAN TUMINARO.

SARAH CHAPIN COLUMBIA, McDermott Will & Emery LLP, Boston, MA, argued for defendant-appellee. Also represented by IAN BARNETT BROOKS, PAUL WHITFIELD HUGHES, Washington, DC; JACK B. BLUMENFELD, MEGAN

DELLINGER, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE.

---

Before LOURIE, PROST, and CHEN, *Circuit Judges*.

LOURIE, *Circuit Judge*.

TRUSTID, Inc. ("TRUSTID") appeals from a decision of the United States District Court for the District of Delaware denying TRUSTID's motion for judgment as a matter of law ("JMOL") on a claim of infringement of U.S. Patents 8,238,532 (the "'532 patent") and 9,001,985 (the "'985 patent") and granting Next Caller, Inc.'s ("Next Caller's") motion for JMOL on a claim of false advertising under the Lanham Act. *See TRUSTID, Inc. v. Next Caller, Inc.*, No. 1:18-cv-00172, 2022 WL 318299 (D. Del. Jan. 5, 2022) ("*Decision*").  For the following reasons, we *affirm*.

BACKGROUND

In the late 2000s, TRUSTID developed a caller identification product known as the Authenticator and described that system and a method of using it in the '532 and '985 patents.  Next Caller later entered the caller identification market at a lower price point than the Authenticator with a product known as VeriCall.

Both products detect fraudulent or "spoofed" calls while authenticating those from a business's genuine callers.  TRUSTID advertised that such authentication could prove beneficial for businesses that utilize automated Interactive Voice Response ("IVR") technology to answer calls.  In particular, TRUSTID advertised that use of the Authenticator could lead to a 5–10 percent improvement in IVR containment rates, a measure of callers who can have their issues resolved by the automated system without having to speak to a live agent.  Such increases in IVR containment may save businesses money because, if a caller has her issue

resolved by the automated system, the business need not pay an agent to provide that caller with additional service.

After learning about TRUSTID's IVR-containment marketing, which had been confirmed via extensive testing, Next Caller's Head of Sales instructed his team to "jack that stat or make up a number like 8%" for Next Caller's product. J.A. 8557. Thereafter, Next Caller advertised VeriCall as providing a 10 percent increase in IVR containment rates.

TRUSTID sued, asserting that Next Caller falsely advertised VeriCall's ability to increase IVR containment by 10 percent. J.A. 6294, 6540. At trial, the jury found Next Caller's 10 percent IVR containment statements to be literally, and willfully, false, ultimately finding in favor of TRUSTID on its claim for false advertising under the Lanham Act. The jury subsequently awarded TRUSTID $1.44 million in damages, plus an additional $1.44 million in punitive damages.

TRUSTID also sued for infringement of the '532 and '985 patents. The '532 patent relates to TRUSTID's caller-ID system. Representative claim 32 is presented below:

> 32. A system for performing forensic analysis on calling party number information associated with <u>an incoming call</u> from a telephonic device, <u>before the incoming call is answered</u>, comprising
>
> > an interface for receiving calling party number information associated with the incoming call;
> >
> > a memory configured to store a plurality of expected call patterns; and
> >
> > one or more processors configured to:
> >
> > > gather operational status information associated with the calling party number information, and

> assign a source origin confidence metric to the calling party number using the operational status information and an expected call pattern in the plurality of expected call patterns.

'532 patent at col. 16 l. 62–col. 17 l. 9 (emphasis added).

The '985 patent relates to TRUSTID's caller-ID method. Representative claim 1 is presented below:

> 1. A method of determining a source origin confidence metric of a calling party number or a billing number associated with <u>an incoming call to a called party telephonic device from a calling party telephonic device</u>, comprising:
>
> receiving by an electronic system associated with the called party telephonic device the calling party number or billing number, wherein the electronic system receives the calling party number or billing number from the called party telephonic device;
>
> after receiving the calling party number or billing number and <u>before the incoming call is answered</u>, gathering by the electronic system associated with the called party telephonic device operational status information associated with the calling party number or billing number; and
>
> determining by the electronic system associated with the called party telephonic device the source origin confidence metric for

> the calling party number or billing number.

'985 patent at col. 15 ll. 2–19 (emphasis added).

Next Caller focused its noninfringement arguments on three claim limitations, one of which is shared across the two asserted patents. In particular, Next Caller asserted that VeriCall did not perform its authentication analysis "before the incoming call is answered," as required by both asserted patents, because its analysis is performed after an IVR system answers incoming calls. At trial, the jury accordingly found TRUSTID's patents valid but uninfringed.

TRUSTID and Next Caller both moved for JMOL, with Next Caller moving for a finding of no false advertising and no punitive damages, and TRUSTID moving for a finding of infringement. The district court denied TRUSTID's motion but granted Next Caller's motion, finding no false advertising while upholding the jury's finding of noninfringement. TRUSTID appealed the grant of JMOL finding no false advertising and the denial of JMOL regarding infringement. We have jurisdiction under 28 U.S.C. § 1292(c)(1).

## DISCUSSION

We review decisions on motions for JMOL under the law of the regional circuit. *MobileMedia Ideas v. Apple*, 780 F.3d 1159, 1164 (Fed. Cir. 2015). The Third Circuit reviews district court JMOL decisions *de novo*, viewing the record in the light most favorable to the verdict winner and drawing all reasonable inferences in its favor. *Id.* "Only if the record is 'critically deficient of the minimum quantum of evidence' on which a jury could reasonably base its verdict does the Third Circuit affirm a grant of JMOL." *Id.* (citing *Pitts v. Delaware*, 646 F.3d 151, 155 (3d Cir. 2011)).

TRUSTID contends that the district court erred in entering JMOL overturning the jury verdict that Next Caller willfully engaged in false advertising under the Lanham

Act. TRUSTID also contends that the district court erred in upholding the jury's findings of noninfringement.

I.

We turn first to the district court's grant of Next Caller's motion for a JMOL of no false advertising under the Lanham Act. Section 43 of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act.

15 U.S.C. § 1125(a)(1)(B).

In the Third Circuit, a Lanham Act false advertising claim requires a showing of five elements:

1) that the defendant made false or misleading statements as to his own product or another's;

2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

3) that the deception is material in that it is likely to influence purchasing decisions;

4) that the advertised goods travelled in interstate commerce; and

5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert v. Breathassure*, 204 F.3d 87, 91–92 (3d Cir. 2000).

Although the district court agreed with the jury that Next Caller willfully made literally false statements concerning IVR containment (element one), it found insufficient evidence of deception (element two), materiality (element three), and injury (element five). The district court therefore entered JMOL reversing the jury's verdict.

TRUSTID contends that sufficient evidence exists to support the jury's finding of false advertising, and thus that the district court erred in overturning that verdict. In addition, TRUSTID contends that the jury may have based its verdict on a separate legal theory involving price disgorgement. At oral argument, TRUSTID further contended that such a theory does not require proving actual deception or materiality. We address these arguments in turn.

A.

We first address whether there was a deficiency of proof in establishing any of the five elements of a Lanham Act claim under Third Circuit law. We begin and end with element three: materiality.

The parties dispute what is required for the materiality prong to be met. TRUSTID argues that a showing of actual reliance on a false statement is not required to establish materiality. Rather, the false statement need only be "likely to influence the purchasing decision." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3d Cir. 1990). However, the seminal Lanham Act case in the Third Circuit, *Parkway Baking v. Freihofer Baking Co.*, 255 F.2d 641 (3d Cir. 1958) holds that, for cases involving monetary damages, "there must be a showing of some customer reliance on the false advertisement." *Id.* at 648; *see also Decision* at *9 (framing the materiality element as requiring that "the purchasing decision of the deceived party [be] impacted by the deceptive

statement"). We find it unnecessary, however, to determine whether TRUSTID needed to demonstrate actual reliance on Next Caller's false statements or just a likelihood that they would influence purchasing decisions because, under either theory, there is insufficient evidence to support a finding of materiality.

First, we look to the record, viewing it in the light most favorable to TRUSTID, to determine whether it is critically deficient in the minimum quantum of evidence on which a jury could reasonably find that the 10 percent IVR containment statements actually influenced customers' purchasing decisions. *See MobileMedia Ideas*, 780 F.3d 1164. In performing the same analysis, the district court held that "there is a dearth of evidence that any customer relied on or was impacted by the 10% IVR statement in connection with making purchasing decisions." *Decision* at *9. In particular, the court noted that "the only evidence for [] customers that addressed IVR containment suggested that IVR containment was not important or relevant to their purchasing decisions." *Id.* We agree.

The record contains evidence relating to only four Next Caller customers: Capital One, Dish Network, Comcast, and BBVA. TRUSTID has not pointed us to any part of the record establishing that any of these customers' decisions to purchase a call authenticator product were influenced by Next Caller's false statements.

Indeed, Capital One made its purchasing decision before the false statements were ever made. J.A. 60 (finding the false IVR statement was first made in September 2017), 6443–47 (establishing that Capital One made its purchasing decision no later than April 2017); *see also id.* 6509. The false statements therefore could not have influenced Capital One's purchasing decision.

For Dish Network, a company representative expressly testified that it did not rely on Next Caller's false IVR containment claims when making its purchasing decision.

Case 1:19-cv-00662-CFC Case: 22-1433 Document: 35 Document 370 Page: 23 Filed: 03/01/2023 Page: 11 of 13 PageID #: 19464

TRUSTID, INC. v. NEXT CALLER, INC. 9

J.A. 6550–51. Instead, it relied on a positive referral from Capital One, which had conducted two pilot trials to test VeriCall's authentication capabilities, including one head-to-head test with TRUSTID's Authenticator product. J.A. 6446–47, 6481. After completing these trials, Capital One determined that VeriCall "demonstrate[d] better accuracy" at a fraction of the cost of TRUSTID's Authenticator product. J.A. 6522–24; *see also* J.A. 6312–13, 7877–78, 6525 (finding that VeriCall caught non-authentic, "spoof" calls that the Authenticator missed). After Capital One provided this positive referral, Dish Network performed its own independent evaluation of VeriCall, and subsequently decided to purchase it. *Id.* 6550–51.

Representatives from Comcast and BBVA further testified that they did not use VeriCall for IVR containment purposes. *See* J.A. 6532 (testimony that BBVA had not used VeriCall for "[IVR] containment purposes at all"); *id.* 6540-41, 6544 (testimony that Comcast did not consider using VeriCall for IVR containment because Comcast does not "use IVR authentication to drive IVR containment"). These company representatives further testified that their companies elected to purchase VeriCall based on a variety of factors, including independent testing, relating to call authentication, not their application to IVR containment. *See, e.g.*, J.A. 6436–37, 6438.

Thus, whether because of the timing of the purchase (Capital One), independent testing (Capital One, Dish Network, Comcast), reliance on positive referrals (Dish Network), use of the product for authentication rather than IVR containment (Comcast, BBVA), or explicit testimony that the marketing materials containing the false statement were not relied upon for making purchasing decisions (Dish Network), none of these customers showed any actual reliance on the false 10 percent IVR containment statements.

Even assuming that Third Circuit law required TRUSTID to establish only that customer purchasing decisions were *likely* to be impacted by the false statements, we still find a deficiency of evidence. TRUSTID has not pointed to any evidence suggesting that any one of these four customers was likely to be influenced by the false statements after having performed their own independent testing of the product or in deciding to purchase VeriCall for implementation outside of the IVR context. TRUSTID also has not pointed to any evidence suggesting that Next Caller had or was likely to procure other customers interested in purchasing VeriCall for application in an IVR context such that their purchasing decisions were likely to have been affected by the false statements.

Evidence in the record established that "[i]f one vendor has [a] better IVR containment metric than the other, that might be something that [a customer] would consider when selecting a vendor." J.A. 6531–32. However, whether a metric "might be something" to consider when selecting between two vendors is insufficient to establish a likelihood of influencing a decision to purchase one authentication product over another. Although TRUSTID's CEO testified that IVR containment is "the single key metric for companies that use it," the record fails to provide testimony from a Next Caller customer that did use or consider using VeriCall for that purpose. *See* J.A. 6295–95. At best, the record reflects that it was possible that, sometime within the three-and-a-half-year window during which Next Caller falsely claimed unproven IVR containment improvements, a potential customer interested in purchasing an authenticator for use within an IVR context *could* have had its purchasing decision influenced by Next Caller's false statements. That is not enough to establish materiality. *See, e.g.*, *Allen Organ Co. v. Galanti Organ Builders Inc.*, 798 F. Supp. 1162, 1164–65, 1169–70 (E.D. Pa. 1992) (holding that testimony from plaintiff's corporate president on the perceived effect that false advertising had on

Case 1:19-cv-02083 Case 22-1433 Document 672-1 35 Filed Page 03/13 Filed 03/01/2023 ID #: 19466

TRUSTID, INC. v. NEXT CALLER, INC. 11

consumers, along with an economist's testimony on the alleged effects on plaintiff's sales due to the defendant's entry into the market, was insufficient to establish an "impact of the offensive materials directly on the purchasing public"), *aff'd*, 995 F.2d 215 (3d Cir. 1993) (affirming without written opinion).

Because of the deficiency in proof to establish materiality, we affirm the district court's decision finding no Lanham Act violation under Third Circuit law.

B.

We next turn to TRUSTID's profit disgorgement theory. According to TRUSTID, under *Williamson-Dickie Manufacturing Co. v. Davis Manufacturing Co.*, 251 F.2d 924 (3d Cir. 1958), if a plaintiff successfully establishes that the defendant committed a willful violation of the Lanham Act, then the plaintiff is entitled to disgorgement of profits. At oral argument, TRUSTID asserted that profit disgorgement was available even absent a showing of materiality of that false statement. We are not persuaded.

The decision in *Williamson-Dickie* was predicated on a finding of trademark infringement, that is, an actual finding of injury, with a resulting right to recover any resulting damages. *Id.* at 927. Here, although TRUSTID is correct that there was a finding of a willfully false statement, as discussed above in Section I.A, TRUSTID failed to establish that it had a right to recover under the Lanham Act under the operable Third Circuit law. The willfully false statement, standing alone, does not establish this right; TRUSTID still had to show each of the other four elements of the claim to be on par with the finding of trademark infringement in *Williamson-Dickie*. Because TRUSTID failed in that respect, the price disgorgement theory advanced in *Williamson-Dickie* is inapposite.

II.

We turn next to the decision denying TRUSTID's motion for JMOL of infringement, which we review *de novo*, viewing the record in the light most favorable to the verdict winner, which, for this issue, was Next Caller. *See MobileMedia*, 780 F.3d at 1164.

The dispute over infringement focused on three distinct claim elements across the two asserted patents. One of those claim elements—performing an authentication analysis "before the incoming call is answered"—is common to both asserted patents, and our findings on it are dispositive in both patents.

TRUSTID asserts that Next Caller infringes the "incoming call" limitation because VeriCall performs its authentication analysis before the call is answered by a live agent. Next Caller argues that by the time the agent answers the call, it is no longer an "incoming call" because it has already been "answered" by the IVR.

Although the district court construed "call" to mean "any connection" over a network, and construed "is answered" to mean "actually or virtually goes off the hook," it did not construe "incoming." *See* J.A. 12–13. Thus, although TRUSTID frames this dispute as a legal one concerning the proper construction of the incoming call limitation, we find the actual question on appeal is whether the jury could have reasonably determined that a call already answered by the IVR still constituted an "incoming call" when it was later answered by a human agent. That is not a question of law, but rather a question of fact challenging the sufficiency of the evidence of noninfringement. *See ePlus v. Lawson Software*, 700 F.3d 509, 520 (Fed. Cir. 2012); *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007); *see also Kaufman v. Microsoft*, 34 F.4th 1360, 1369–70 (Fed. Cir. 2022).

In denying TRUSTID's motion for JMOL, the district court concluded that the jury was presented with sufficient evidence to support its verdict. *Decision* at *5; *see also*, *e.g.*,

J.A. 6439–40, 6826–27, 6839–40, 7667–68, 7680, 7801. Although the court found that there was conflicting testimony, it reasoned that the "jury was free to credit the evidence presented that the 'call' was no longer an 'incoming call' once it was answered by the IVR." *Decision* at *5. We agree. Because that claim limitation is common to all independent claims of the asserted patents, we need not assess any additional limitations to affirm the district court's denial of JMOL as to infringement.

## CONCLUSION

We have considered TRUSTID's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

## AFFIRMED

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 3, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Edward R. Reines, Esquire<br>Derek C. Walter, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA  94065<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Randi W. Singer, Esquire<br>Elizabeth McLean, Esquire<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY  10153<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Derek J. Fahnestock*
_____
Derek J. Fahnestock (#4705)